STATE *vs.* JOHN WESLEY FOUNTAIN (No. 40).

STATE *vs.* JAMES MASON (No. 41).

STATE *vs.* VAUGHAN BALLARD (No. 43).

*Statute—Local Option Act; Construction of—Constitution; Federal and State—Legislative Power—Police Power—Debates in Constitutional Convention; Effect of—Constitutionality of Act—Presumption.*

1. The act known as the Local Option Act, approved March 21, 1907, being *Chapter* 65 *Volume* 24 of the *Laws of Delaware*, is constitutional, and the election held thereunder was legal and valid.

2. The General Assembly has power to submit the question of "License or no License" to a vote of the people at a special election.

3. It is not a condition precedent to the exercise of such power that a majority of the members in each House from the districts in which such question is to be submitted, should submit a request as provided in *Article* 13 *of the Constitution.*

4. The act is not unconstitutional in that the penalties and processes provided by sections 11 and 12 thereof, are enforced only if a majority of the electors in any district vote to enforce the same.

5. The act is not violative of *Section* 16 *of Article* 2 *of the Constitution*, which prohibits more than one subject being embraced in an act or in the title thereof.

6. The said act is not obnoxious to any provision of the Constitution of the United States.

7. The case of *Rice s. Foster*, 4 *Harr.* 479, has no application to this case.

8. The opinion given by the Chancellor and Judges to the Governor touching the constitutionality of the local option act passed at the session of 1905, has no bearing upon the questions raised in this case.

9. The debates on the local option provisions in the Constitutional Convention, reviewed; and from such debates it appears that the Convention believed that under Section 1 of Article 13, the General Assembly would have the right to submit the question of "License or no License" to a vote of the people without request.

10. The proceedings of the Constitutional Convention, however, are entitled to but little consideration by the Court where the purpose

and meaning of the provision in question can be clearly ascertained from its language.

11. The Legislature, acting in the exercise of its police power, is deemed to be the best judge of what laws and penalties are adequate and proper to meet conditions existing in the various territorial subdivisions of the State; but such laws must be uniform in their operation on all the citizens in the territorial subdivision.

12. It is a well settled rule of law that every statute is presumed to be constitutional, and that courts will not declare one to be unconstitutional unless it is clear that it is so.

( *January* 30, 1908.)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Robert H. Richards*, Attorney-General, for the State.

*Willard Saulsbury* for the demurrants.

Court of General Sessions, New Castle County, January Term, 1908.

DEMURRERS to indictments and information.

The first two defendants above named were indicted at this term, respectively, for illegally registering as a voter, and illegally offering to vote at the Local Option Election held in Delaware on November 5th, 1907. Against the defendant Ballard there was an information filed at the said term for violation of *Section 7, Article 5 of the Constitution of the State of Delaware*, charging him with illegally inducing another to vote at said election.

The facts and contentions of counsel appear in the opinion of the Court.

PENNEWILL, J., delivering the opinion of the Court:

At the present term of this Court of General Sessions indictments were found, or informations filed, against the defendants, charging them with illegally offering to vote, or illegally registering or illegally inducing another to vote in violation of *Section 7*,

*Article* 5 *of the Constitution* of this State.  To such indictments and informations general demurrers have been filed by the defendants, which allege that the indictments and informations are insufficient in law because they do not charge any indictable offense, inasmuch as the election at which the defendants offered to vote, or became registered to vote, was held under a statute which *is* unconstitutional and invalid, so far as that election was concerned.

The specific question, therefore, to be determined by this Court is whether that part of the said act under which the election was held, was an unconstitutional exercise of legislative power, and for that reason void and uninforceable.

The parts of the act referred to which are material to this case are the title and *Sections* 1, 11 *and* 12, *Chapter* 65, *Vol.* 24 which are as follows:

"An Act Providing for the Submission to the vote of the qualified Electors of the Several Districts of the State Mentioned in *Section* 2, *Article XIII.*, of the Constitution of the State of Delaware, the question Whether the Manufacture and Sale of Intoxicating Liquors Shall be Licensed or Prohibited Within the Limits of the said Several Districts, in Accordance with said *Article XIII.* of said Constitution, and Fixing the Penalties for the Illegal Manufacture and Sale of Intoxicating Liquors in any of said Districts wherin there shall be a Majority of Votes Cast Against License."

"Section 1.   That on the Tuesday next after the first Monday of November in the Year of our Lord one thousand nine hundred and seven, in each of the several districts of the State mentioned in *Section* 2, *of Article XIII. of the Constitution of the State of Delaware*, the question, Whether the Manufacture and Sale of Intoxicating  Liquors shall be Licensed or Prohibited within the limits of said several Districts, shall be submitted to the vote of the qualified electors of said several districts.   In every such district in which there shall be, upon said vote a majority against license, no person, firm or corporation

shall thereafter manufacture or sell spirituous, vinous, or malt liquors, except for medical or sacramental purposes within said district, until, at a subsequent submission of such question, a majority of votes shall be cast in said district for license."

"Section 11.    That if it shall appear at said election that a greater number of votes have been cast against license than for license in any of said Local Option Districts of this State, it shall be unlawful for any person or persons, firm, company, association or corporation, or the agent, officer or servant of any firm, company, association or corporation, to manufacture or sell spirtuous, vinous or malt liquors, except for medicinal or sacramental purposes within said districts, until at a subsequent submission of such question a majority of votes shall be cast in said district for license.    Any person or persons, or any agent, officers or servant of any firm, company, association or corporation who shall violate any of  the  provisions of this Section shall be deemed  guilty  of  a  misdemeanor, and  upon  conviction thereof shall,  for  the  first offense, be fined not less than Fifty Dollars ($50.) nor more than Two Hundred Dollars ($200.) and the cost of prosecution and shall be imprisoned for a term not exceeding six months; and for each and every subsequent offense shall be fined not less than One Hundred Dollars ($100.) nor more than Five Hundred Dollars ($500.) and the cost of prosecution, and shall be imprisoned for a term not less than three months nor more than one year."

"Section 12.    That all prosecutions for any and all violations of any of the provisions of this Act shall be upon presentment and indictment to the Court of General Sessions of the County within which the Local Option District wherein the said majority of said vote was against license is located; and any Justice of the Peace of any of said Counties shall have the same authority to receive information of any violation hereof and to hold to bail for appearance to said Court, as is now exercised

by them under the laws of this State in other matters of criminal nature."

It is urged by the defendants that the said act must be declared unconstitutional and void for the following reasons:

1. "The General Assembly has no power to submit the question of license or no license to the people anywhere, in all the districts, or in any district, except at the General Election."

2. "Before the General Assembly has the power under Article XIII. of the Constitution to submit to the voters of any or all the districts of the State the question of license or no license, a majority of the members of the General Assembly in each House from each district in which such question is to be submitted must, as a condition precedent, submit a request as provided in said Article for the submission of the question. This request is necessary to give the General Assembly the power to submit the question of license or no license under Article XIII. of the Constitution."

3. "The Act is unconstitutional in that by Sections 11 and 12 thereof an unconstitutional delegation of legislative power is attempted to be made to the voters in each separate district, the penalties and processes provided by said sections being enforceable only if a majority of the electors in any district vote to enforce the same. This is clearly unconstitutional under the decisions of our Courts."

4. "The Act is unconstitutional because it violates *Section 16 of Article II. of the Constitution* prohibiting more than one subject being embraced in an Act or in the title thereof. The Act under consideration embraces two subjects, both of which are expressed in the title."

The briefs submitted by counsel on the respective sides are exhaustive, and the oral arguments made before this Court were remarkably able and forceful. In view of this fact, and also because of the deep and general interest felt in the decision of the question, we have given the matter the most careful consideration of which we were capable in the time at our command.

We shall consider the objections made by the defendants against the Act on the ground of its unconstitutionality, in the order in which they were argued and as above stated.

But before doing so we may say that although it does not appear that the defendants contend that the act is in conflict with any provision of the Federal Constitution, a portion of the plaintiff's brief is devoted to that subject, and it may be proper, therefore, to notice it briefly. We think it will not be denied in this day that a State Legislature, in the exercise of the police power of the State, may enact such laws as are necessary to preserve the peace and good order of society, and the safety of its members; and if the public safety or morals requires the discontinuance of any manufacture or sale, the legislature may provide for its discontinuance notwithstanding some persons may be injuriously affected or inconvenienced thereby. The police power, which is exclusively in the states, is competent to prohibit the sale and manufacture of an article of commerce which they believe to be pernicious in its effects, and all measures of restraint or prohibition necessary to effect the purpose are within the scope of that authority.

There can be no distinction in principle in the application of the provisions of the Federal Constitution to a prohibitory statute and to a local option statute, the one being a direct and express prohibition of the sale of intoxicating liquors, and the other a conditional prohibition thereof, the condition being the result of a vote to be taken upon the question.

It can be said, therefore, as the result of an examination of many authorities, that a local option statute, such as the one in question, is not obnoxious to any provision of the Constitution of the United States.

*Boston Beer Company vs. Massachusetts*, 97 *U. S.*, 25; *Gundling vs. Chicago*, 177 *U. S.*, 183; *Gray vs. Conn.*, 159 *U. S.*, 74; *Mugler vs. Kansas*, 123 *U. S.*, 623; *Bartemeyer vs. Iowa*, 18 *Wallace*, 129; *Kidd vs. Pierson*, 128 *U. S.*, 1; *Giozza vs. Tiernan*, 148

*U. S.*, 657; *Miller vs. Ammon*, 145 *U. S.*, 421; *State vs. Allmond (Del.)* 2 *Hous.*, 612; *State vs. Wickenhoefer*, 6 *Pennewill*, 120.

We will now consider the reasons urged and relied upon by the defendants to show that the said act, which is *Chapter* 65, *Volume* 24, *of the Laws of Delaware*, is repugnant to the Constitution of the State of Delaware, and therefore void.

The statute was passed under the authority of *Asticle* 13 *of the Constitution* of this State, adopted in 1897. Said Article is as follows:

### "Local Option.

"Section 1. The General Assembly may from time to time provide by law for the submission to the vote of the qualified electors of the several districts of the State, or any of them, mentioned in Section 2 of this Article, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits thereof; and in every district in which there is a majority against license, no person, firm or corporation shall thereafter manufacture or sell spirituous, vinous or malt liquors, except for medicinal or sacramental purposes, within said district, until at a subsequent submission of such question a majority of votes shall be cast in said district for license. Whenever a majority of all the members elected to each House of the General Assembly by the qualified electors in any district named in Section 2 of this Article shall request the submission of the question of license or no license to a vote of the qualified electors in said district, the General Assembly shall provide for the submission of such question to the qualified electors in such district at the next general election thereafter.

"Section 2. Under the provisions of this Article, Sussex County shall comprise one district, Kent County one district, the City of Wilmington, as its corporate limits now are or may hereafter be extended, one district, and the remaining part of New Castle County one district.

"Section 3. The General Assembly shall provide necessary laws to carry out and enforce the provisions of this Article, enact laws governing the manufacture and sale of intoxicating liquors under the limitations of this Article, and provide such penalties as may be necessary to enforce the same."

We understand the defendants to contend, *first*, that the statute in question is unconstitutional in that it provides that the vote upon the question of license or no license shall be taken at a special election, it being claimed that the General Assembly has no power to submit such question to the people of the State anywhere, in all the districts, or in any district, except at a general election.

Reference has been made in the argument to the case of *Rice vs. Foster*, 4 *Harr.*, 479, in which it was held that the Local Option Act of 1847 was, under the Constitution then in force, an unconstitutional exercise of legislative power. The decisions in that case made it impossible for the Legislature to pass any valid law authorizing the people to decide by ballot whether the manufacture and sale of intoxicating liquors should be licensed or prohibited, and such condition necessarily continued until there was a change in the fundamental law. Such change was made by the framers of the present Constitution, the 13th Article of which expressly confers upon the General Assembly power to enact laws submitting the question of license or no license to a vote of the people of the several Districts into which the State is divided by Section 2 of said Article. The authority for the enactment of such laws is contained in the present Constitution, and upon that alone is the validity of the statute before us based. The case of *Rice vs. Foster*, therefore, decided long before the adoption of the Constitution of 1897 can have no application to the questions we are to determine, and may be entirely disregarded in the discussion and decision of the present case.

The defendants contend that the Legislature, except under

express authority, may never constitutionally provide for holding a special election, thereby limiting said authority to the filling of vacancies in the General Assembly as provided in *Section 6 of Article 2 of the Constitution,* and the choosing of Representatives in Congress, the latter being provided for by Federal Law.

It is true that a special election for the filling of vacancies in the General Assembly is the only one directly and expressly referred to in the Constitution, but we think such fact is no limitation upon the power of the Legislature to provide for special elections with respect to other matters, such as that of local option, and other questions, when the Constitution does not specifically provide that the vote thereon shall be taken at a general election. In other words, if there is no constitutional provision for a General election, and no inhibition upon the authorization by legislative enactment of a special election to determine other questions than those which the Constitution requires to be determined at the general election, the Legislature has the power to authorize a special election to determine such other questions.

The legislative power of this State is vested by the Constitution in the General Assembly, and such grant of power is broad and general. It is true that such power may be, and is, limited by any other provisions in the Constitution inconsistent therewith, but such limitations cannot be regarded as an enumeration of the only specific powers which, under the broad general grant, the General Assembly may possess. The fact that the Constitution provides that certain questions shall be determined at the general election, is no limitation upon the power of the Legislature to provide for the submission of other questions to vote of the people at a special election, where the Constitution has not otherwise provided, or prohibited.

"In creating a legislative department and conferring upon it the legislative power the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country, subject to

such restrictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United States. The legislative department is not made a special agency for the exercise of specifically defined legislative powers, but is entrusted with the general authority to make laws at discretion."

*Cooley's Constitutional Limitations* (*7th Ed.*) 126.

"The people in framing the Constitution committed to the Legislature the whole law-making power of the State which they did not expressly or impliedly withhold. Plenary power in the Legislature, for all purposes of civil government, is the rule."

Chief Justice Denio, in *People vs. Draper*, 15 *N. Y.*, 532.

If the Constitution of this State has given to the Legislature the general power, in their discretion, to submit the question of license or no license to a vote of the people, and has not provided that such question shall be submitted at the general election, or prohibited its submission at a special election, it is clear that an Act providing for a vote to be taken at a special election would be a valid, and constitutional exercise of such power.

But the defendants insist that even if the Legislature has the power to submit to a vote of the people the question of license or no license, in its discretion, and without the request of a majority of the members of each House from any District, yet a fair and reasonable interpretation and construction of Article 13 requires that such vote shall be taken at the general election. If such contention be true, manifestly an Act providing for the submission of the question at a special election would be uncon stitutional, because a provision that a certain specific power shall be exercised in a particular manner is a limitation upon the Legislature, confining it, in the exercise of that power, to the particular manner prescribed.

But is the contention taken by the defendants tenable?

The first sentence of *Section* 1 *of Article* 13 *of the Consti tution*, is as follows:—"The General Assembly may from time to time provide by law for the submission to the vote of the qualified electors of the several Districts of the State, or any of them, men

tioned in Section 2 of this Article, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits thereof; and in everyDistrict in which there is a majority against license, no person, firm or corporation shall therafter manufacture or sell spirituous, vinous or malt liquor, except for medicinal or sacramental purposes, within said District, until at a subsequent submission of such question a majority of votes shall be cast in said District for license."

The second sentence of said Section is in the following language:—"Whenever a majority of all the members elected to each House of the General Assembly by the qualified electors in any District named in Section 2 of this Article shall request the submission of the question of license or no license to a vote of the qualified electors in said District, the General Assembly shall provide for the submission of such question to the qualified electors in such District at the next general election thereafter."

There can be no doubt that if the first sentence stood alone, and constituted the entire provision upon the subject, the Legislature would have the power to enact a law providing for the submission of the question at a special election, because the authority thereby conferred would be specific and ample. It would be a complete provision, containing all the power required for the purpose.

Is the first sentence so interrelated and connected with the second as to be qualified thereby? Was it the intention of the framers of the Constitution that the general election provided for in the second sentence should be the election at which a vote must be taken under either sentence or provision?

The two sentences might well have formed two sections, but the fact that they are contained in a single section—the one immediately following the other—does not change their meaning, or limit their force and operation. The effectiveness of the one depends in no wise upon the other. The first sentence or provision confers power generally upon the Legislature, in its own discretion, to provide for the submission of the question; the

second confers not only a power, but imposes a duty, upon the Legislature to submit the question in one or more Districts upon the presentation of a request by a majority of the members of the General Assembly from any District. The one is discretionery or permissive; the other is mandatory. Under· one provision the Legislature is given the power, whenever they deem it proper, to submit the question; under the other a majority of the members of each House from any District is given the power to compel the submission. In one case, under the general power, there is not only a discretion as to the submission of the question, but a discretion also as to the time, and character of the election, whether general or special; in the other there is no discretion as to either of these things, but the provision is mandatory as to both. Generally speaking, it seems to us that a fair and reasonable construction of Section 1 of Article 13 is this: The Constitution provides that the Legislature may submit the question of license or no license, to be voted on at such election and time as they deem proper. If, however, at any time a majority of the members of each House from any District shall request such submission, the Legislature must comply with such request; and when acting upon such request, they shall submit the question to be voted on at the general election.

It may be well to notice here a statement of counsel for the defendants, contained in their brief, to the effect that the Chancellor and Judges of this State have upheld their contention that the vote must in any event be at a general election, in an opinion given to the Governor touching the constitutionality of the Local Option Act passed by the Legislature at the session of 1905 for the District comprising Kent County. It is only necessary to say that the opinion so given can have no bearing upon the questions raised in this case. The Act upon which the Chancellor and Judges then gave their opinion was passed by the Legislature when acting upon the request of a majority of the members of each House from the District comprising Kent

County, for a submission of the question. Such request was recited in the Act itself, and acting thereon the Legislature had no power to submit the question at any election other than the next general election. Such in fact was the opinion referred to, which held that the Act then in question was unconstitutional and void because the vote provided for could not be held at the next general election as provided by the Constitution. It was predicated upon an Act which, upon its face, showed that the General Assembly acted upon a request, and not of their own volition and discretion.

It is argued on behalf of the defendants that the framers of the Constitution must have intended that a vote for license or no license should be had only at the general election, because only at such an election could the real sentiment of the people be obtained; and for the further reason that a vote at a general election would secure the expression of all the electors of the State without additional expense. It seems to us that such reasons are largely speculative, and do not appear to be based upon, or supported by, any expressions of the members of the Convention. It could not have been assumed that only at a general election could the real sentiment of the people be obtained, for it might be very strongly argued that such sentiment could be better obtained at a special election where the question submitted would not be affected by other issues. Indeed, many reasons might be urged against a vote at the general election. Of course it must have seemed to the members of the Convention necessary to provide for the submission at a general election when they came to consider the mandatory part of Section 1 of Article 13; and when they concluded to make it mandatory upon the Legislature to submit the question upon request, they could not in their wisdom leave the time and manner of such vote entirely to the discretion and pleasure of the General Assembly, because the time fixed might be so remote or inconvenient as to practically defeat the very purpose of the mandatory clause.

We cannot say that the Constitution makers must have intended a general election in any case, on account of the expense that would be saved thereby. It is quite possible that they did not consider the expense at all, or if they did, that they believed the additional expense would be justified by the desirability of taking the vote at a time when questions of party politics would not be involved.

In support of his contention that the true meaning and intent of Section 1 of Article 13 of the Constitution is, that a vote on the question of "license or no license" can be had at a general election only, reference is made to the proceedings in the Constitutional Convention on the subject of local option.

It would extend this opinion beyond any reasonable length to quote largely from those proceedings, although it is our purpose in dealing with defendant's second proposition to make some reference thereto. That proposition is so closely connected with the one we are now discussing that much that might be said on the one would be pertinent to the other. We think it sufficient to say here that while in the debates in the Convention frequent reference was made to the general election, and none at all to a special election, it is nevertheless a fact to be noticed that in every instance where a general election was mentioned the subject under consideration was the mandatory provision for submission. It could not be expected, therefore, that any other election would be mentioned in such discussion, and no reasonable inference can be drawn therefrom that the Convention intended that the vote should be taken at the general election if the question should be submitted under the discretionary clause. The legal mixim—*expressio unius exclusio alterius*—invoked by the defendants, does not, therefore, apply. Each sentence of *Section 1 of Article* 13, as we have stated, is a complete and independent provision, embodying a distinct and different idea, and any expression of opinion as to the mode of procedure in one case would not be a limitation upon the grant of power contained in the other.

We come now to a consideration of the defendants' second objection to the local option act, viz: That before the General Assembly had the power, under *Article* 13 *of the Constitution*, to submit to the voters of any or all the Districts of the State the question of license or no license, a majority of the members of the General Assembly in each House, from each District in which such question was to be submitted, must, as a condition precedent, have submitted a request, as provided in said *Article*, for the submission of the question, which request is claimed to be necessary to give the General Assembly the power to submit the question of license or no license under said *Article* 13.

The history of the local option provision in the Constitutional Convention is interesting, but not at all supportive, we think, of the defendants' contention.

The *Article* first reported from the committee provided that a vote must be taken upon the question at the general election in 1898, in all the Districts of the State. The result of the election in any District should control the question of license or no license within that District until the General Assembly, upon a petition of one-fourth of the voters of that District, should provide for a re-submission at the general election next after the passage of the Act; and it was made the duty of the General Assembly, upon such petition of one-fourth of the voters, to provide for the submission of the question.

It will be observed that this provision was wholly mandatory and very naturally the election provided for was the general election.

Such report was made by a majority of the committee, but at the same time Mr. Hering, a member of the Convention, submitted a minority report, proposing a local option provision of a single section, which was as follows:

"Section 1. The General Assembly may provide by law for the submission to the vote of the qualified electors of the several counties, hundreds, districts or other territorial divisions

of the State, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits thereof."

It will be observed that this provision was entirely discretionary, simply conferring the power upon the Legislature to submit the question to a vote of the people. The Convention, therefore, at the very inception of the subject was divided upon the question whether the power conferred should be mandatory as to both the submission and the election or wholly discretionary. It will be found that such difference of opinion continued, and that those who spoke upon the question based their arguments upon the distinction between the two proposals.

On April 12, Mr. Gilchrist offered a substitute for the reports of the majority and minority of the committee, and it provided that "at the next general election, and every four years thereafter, a vote must be taken upon the question of license or prohibition, the result of such an election in each District being conclusive thereafter for a period of four years." This provision was mandatory also, both as to the submission and general election. On the same day Mr. Carlisle offered as a substitute for *Section* 1 of the majority report above mentioned, a provision that is practically the same as the first sentence of *Section* 1 *of Article* 13, as it now appears in the Constitution. That is to say, he proposed to substitute for the mandatory provision of the committee's report, a provision that was entirely discretionary.

On the following day, April 13, Mr. Gilchrist offered as an amendment to the substitute offered by Mr. Carlisle, a provision which is practically the same as the second sentence of *Section* 1 *of Article* 13 as it now appears in the Constitution.

Mr. Gilchrist's amendment was adopted, and thereupon the amended substitute offered by Mr. Carlisle was adopted as *Section* 1 *of Article* 13 of the Constitution of this State.

The amendment proposed by Mr. Gilchrist was simply added to the substitute which Mr. Carlisle had offered as a complete provision on the subject of local option, and there was no

suggestion that it changed, modified, qualified, limited or controlled in any way Mr. Carlisle's substitute. The effect was to add to the discretionary provision offered by Mr. Carlisle the mandatory provision offered by Mr. Gilchrist.

The result of the discussion of the local option question in the Convention was the embodyment of the two distinct ideas in *Section* 1 *of Article* 13, and each idea remained as complete, clear and definite as it was originally intended. Throughout the debates it was clearly the purpose of some of the members to make it mandatory on the Legislature to submit the question upon request, and to make such request effective, the time of such submission was also provided for, to-wit, at the next general election. It is just as manifest that it was the purpose of other members to make the submission of the question discretionary with the Legislature, and accordingly the time when the vote shou d be taken was made discretionary also. It might be either lat a general or special election. Such being the attitude of the members, with no disposition on the part of either side to yield, both provisions contended for were incorporated in *Article* 13. Each one, however, was complete in itself, independent of the other, and to become operative as conditions might require, or seem to the Legislature to warrant.

The particular point to be noted, however, is that the question debated was not whether the vote should be taken at the general election in any event, or whether the question could be submitted at all without a request, but whether the Legislature should be compelled to submit the question of license or no license to the voters of a District upon a request made by the majority of the members of each House from such District. This was the particular issue joined, and about that one point practically all the discussion centered. Some of the members thought the Constitution should not do more than remove the barrier erected by the case of *Rice vs. Foster;* that is, expressly confer upon the General Assembly the power to submit the question of license or prohibition to the vote of the people

whenever the General Assembly should, in their discretion, and of their own volition, see fit to pass a law providing for such submission. But other members were not satisfied to leave it to the exclusive and absolute discretion of the Legislature alone, because they evidently believed that it would not be sufficient to meet the wishes of a large part of the people, at least in some of the Districts, in case a majority of the members of the Legislature, in either House, were not favorable to prohibition. They proposed to assure the taking of a vote in any one or more of the Districts whenever such a vote was desired by the people of such District, or Districts, as shown by the request of their representation in the General Assembly.

It is manifest from an examination of the debates in the Convention, that the members believed that under *Section* 1 *of Article* 13 the General Assembly would have the right to submit the question of license or no license to a vote of the people without request. Such was the opinion expressed by the leading participants in the discussion, and we think no delegate expressed a different opinion based upon the first sentence of *Section* 1.

We have given so much consideration to the proceedings of the Convention because the defendants seemed at the argument to rely to some extent upon such proceedings to establish their contentions. But after all, the proceedings of a Constitutional Convention are entitled to but little consideration by the Court where the purpose and meaning of the provision in question can be clearly ascertained from its language.

Mr. Cooley in his work above mentioned, at 91, says:

"Where the proceedings clearly point out the purpose of the provision, the aid will be valuable and satisfactory, but where the question is one of abstract meaning, it will be difficult to derive from this source much reliable assistance in interpretation." At another part of his work the same writer says: "Whether we are considering an agreement between parties, a statute, or a constitution, with a view to its interpretation, the

thing which we are to seek is the thought which it expresses. * * * If the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument, and neither Courts nor Legislatures have a right to add to or take away from that meaning."

The defendants' third reason for declaring the local option act unconstitutional is, that by *Sections* 11 *and* 12 thereof an unconstitutional delegation of legislative power is attempted to be made to the voters in each separate District, because the penalties and processes provided by said *Sections* are enforceable only if a majority of the electors in any District vote for "no license."

This proposition is based upon the well settled doctrine, fully recognized by the Court in the case of *Rice vs. Foster*, that a Legislature cannot delegate its legislative power.

We have already said that the decision in *Rice vs. Foster* can have no application to the present case because *Article* 13 *of the Constitution* has expressly conferred upon the Legislature the power to submit the question of license or no license to a vote of the people. In *Section* 3 *of said Article* it is provided that "The General Assembly shall provide necessary laws to carry out and enforce the provisions of this Article, enact laws governing the manufacture and sale of intoxicating liquors under the limitations of this Article, and provide such penalties as may be necessary to enforce the same."

Therefore in conferring upon the Legislature power to provide by law for the submission of the question of license or no license, the same *Article* also confers the power to prescribe penalties which would be operative in case the result of such submission required penalties to enforce the condition secured by such election.

*Section* 11 of the Act provides: "That if it shall appear at said election that a greater number of votes have been cast against license than for license in any of the said local option districts of this State, it shall be unlawful for any person" etc.; and then follow the penalties prescribed for a violation of the law.

The question submitted to a vote of the people was simply that which the Constitution authorized, to-wit, license or no license; and not the enforcement of the penalties. It is true the penalties could not be enforced until a majority of the electors in one or more of the Districts had voted for no license, but that was merely a contingency upon the happening of which the Legislature had provided the penalties should become operative. Counsel for the defendants do not deny that it is competent for the Legislature to enact a law, the operation or enforcement of which shall depend upon a contingency that may happen in the future. That is the exact character of the law before us so far as the penalties are concerned. The enforcement of such penalties depended, of course, upon a vote of the people, but upon a vote of the people on a question that the Constitution had given the Legislature the power to delegate or submit to the people.

It seemed to be admitted by defendants' counsel that the Legislature could, either before or after the passage of the local option statute, have enacted a law containing the provision in respect to the penalties, but they insist that such a provision could not be constitutionally embodied in said statute. Presumably in the one case it would be a lawful exercise of legislative power, and in the other an unlawful delegation of such power. We are unable to recognize the distinction.

The parallel sought to be instituted between the penalty provision of the present Act, and the provision in the local option Act of 1847 which the Court in the case of *Rice vs. Foster* declared unconstitutional, wholly fails when it appears that the question submitted to, and voted upon, by the people in the former Act was expressly authorized by the Constitution, and in

the latter was not, the question submitted in each case being "license or no license."

In the cases cited by the defendants in support of their third proposition it was left for the people to approve or disapprove the proposed law, to declare what the law should be, or to determine whether a certain law should be repealed or its operation suspended, etc. It is needless to say that the law before us does not seek to do any of these things. The vote of the people was not in any sense upon the question whether the Act should become a law. The Act in fact became a valid statute immediately upon the Governor's approval, and its validity, as a law, was not in any sense dependent upon the vote of the people.

The defendants' objection to the Act based upon the supposed absurd practical effect thereof, in the event of the passage of subsequent Acts for other Districts, and the imposition of other and different penalties, it is hardly necessary to consider at length.

It has been held by this. Court that the Legislature, acting in the exercise of its police power, is deemed to be the best judge of what laws and penalties are adequate and proper to meet conditions existing in the various territorial subdivisions of the State; and the Legislature may provide different laws and different penalties touching the same character of offenses in the various territorial subdivisions of the State. The only limitation upon such power is, that the law which operates in a political subdivision of the State must be uniform in its operation on all the citizens of such subdivision, or on the class of citizens to be affected by it; and must not, with respect to its operation, make arbitrary and unreasonable classifications of the persons within the sphere of its operation.

*State vs. Wickenhoefer*, 6 *Pennewill* 120; *P., W. & B. R. R. Co. vs. Sharpe*, 2 *Pennewill* 407.

We come now to the fourth and last ground upon which the defendants contend that the local option act should be declared unconstitutional, viz, because it violates *Section* 16 *of*

*Article* 2 *of the Constitution*, which forbids more than one subject being embraced in an Act, or in the title thereof.

*Section* 16 *of Article* 2 *of the Constitution* is as follows: "No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

It is claimed by the defendants that the statute under consideration embraces two subjects, both of which are expressed in the title; and the two subjects are said to be, (1) the submission of the vote on the question of license; (2) penalizing the violation of the provisions of law intended to enforce a condition of prohibition in case any District should vote for no license.

Mr. Cooley in his work above mentioned (7th Ed.) 209, says: "There has been a general disposition to construe such a provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted."

Many States of the Union have in their Constitutions provisions similar to the one we are considering, and we think it can be safely said that Courts in construing such provisions have almost uniformly held that if the matters claimed to constitute two subjects are not separate and distinct subjects, but are connected with each other and germane to the primary objects of the statute, the Act containing them is not invalid as being violative of such provision.

*Monaghan vs. Lewis*, 6 *Pennewill* 218; *Burnside vs. Lincoln County Court*, 86 *Ky.* 423; *Gayle vs. Owen County*, 83 *Ky.* 61; *McGruder vs. State*, 10 *So. Eastern* 281; *Caldwell vs. Barrett*, 73 *Ga.* 604; *Feek vs. Township Board*, 82 *Mich.* 393; *Slymer vs. State*, 62 *Md.* 237.

In the case of *Monaghan vs. Lewis*, the Supreme Court of this State declared that "If all parts of an Act relate directly or indirectly to the general subject of the Act, it is not open to the objection of plurality."

The Constitution of Kentucky contained the following pro-

vision: "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

The Legislature of that State passed an Act entitled "An Act to authorize the people of Lincoln County to vote on prohibiting the sale of liquors, and fixing the penalty for the sale of liquors in said County." The first *Sections* authorized a submission of the question to the voters and later *sections* provided the penalties for violation of the law. The Court in passing upon the constitutionality of the Act in the case of *Burnside vs. Lincoln County Court*, held, that it was not violative of the said constitutional provision, declaring that "All of its provisions relate to the same subject; are naturally connected, and are not foreign to the subject expressed in the title. This is all that is required."

The Supreme Court of Georgia in the case of *Caldwell vs. Barret*, in referring to the objection that the statute under consideration was unconstitutional as containing more than one subject matter, said: "All the provisions contained in the Act are germane to and grow out of the main object and purpose of the Act, and are not different matters therefrom, but merely help to assist in carrying the main object and purpose of the Legislature into effect."

In the case of *Feek vs. Township Board*, the Court held a similar Act constitutional inasmuch as "The object is single and all the instrumentalities are designed to attain that object."

In the case of *Slymer vs. State*, the Supreme Court of Maryland declared that the various matters contained in the Act related to the same general subject matter and were connected with each other.

In all of these cases the Acts under consideration were held to be constitutional, and the question before the Courts was in principle the same as the one before us.

The case of *The Equitable Guarantee and Trust Co. vs. Donahoe*, 3 *Pennewill*, 191, cited by the defendants, cannot be regarded as an authority in support of their contention, because the question involved was not at all analogous. In that case the

original Act provided for taxation "for State and County purposes," which subject was expressed in the title. In the amending Act there was a provision for taxation "for Municipal purposes,' also, and that subject was not expressed in the title. Clearly the decision can have no application to the present case. The defendants referred to only one other act which was declared to be unconstitutional, the title thereof being: "An Act to provide for the Incorporation of Merchants' Mutual Insurance Companies, and to regulate the business of Insurance by Merchants and Manufacturers' Mutual Insurance Companies." There could be no doubt that such an Act embraced two separate and distinct subjects.

Having considered specifically each of the four objections made by the defendants to the Act in question, we may say generally in conclusion, that it is a well settled rule of law that every statute is presumed to be constitutional, and that Courts will not declare one to be unconstitutional unless it is clear that it is so. If there is a doubt in the mind of the Court, the expressed will of the Legislature should be sustained. "Whenever an Act of the Legislature can be so construed and applied as to avoid conflict with the Constitution and give it the force of law, such construction will be adopted by the Courts."

*Cooley on Constitutional Limitations* (7th Ed.), 255.

We are clearly and unanimously of opinion that the Act under consideration, known as the Local Option Act, and approved March 21, 1907, can be so construed. Accordingly we hold that said Act is constitutional, and that the election held thereunder was legal and valid.