# MUTUAL LIFE INS. CO.

## *vs.*

## EMMA WILLEY.

*Life insurance: misrepresentations, when vital and clearly
proven; court should take from jury;
"sound health"; tuberculosis.*

When the insured, at the time of his application, was suffering from tuberculosis, he was not in sound health within the meaning of the policy, and in such a case, where the evidence is clear and uncontradicted, the court should withdraw the case from the consideration of the jury.                    p. 671

Ordinarily, the question of the falsity of an application for insurance is a question for the jury; but where the bad faith of the applicant and falsities of representations are shown by clear and uncontradicted evidence, the court may so rule as a matter of law.                    p. 669

Sound health, within the meaning of life insurance policies, means the absence of any vice in the constitution and of any disease of serious nature that has a direct tendency to shorten life.                    p. 670

*Decided February 11th, 1919.*

Appeal from the Court of Common Pleas of Baltimore City. (Gorter, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Paul M. Burnett* and *Howard M. Emmons* submitted a brief for the appellant.

*Myer Rosenbush* submitted a brief for the appellee.

BURKE, J., delivered the opinion of the Court.

Emma Willey, the appellee, obtained a judgment against the Mutual Life Insurance Company of Baltimore for the sum of three hundred and three dollars and sixty-five cents on a policy of insurance on the life of her grandson, Walter E. Willey. The policy was issued on the 15th day of April, 1916, and the insured died on the 26th day of September, 1917. The company declined to pay the amount of insurance, and the appellee brought suit against it in the Court of Common Pleas and recovered the judgment from which this appeal was taken.

At the conclusion of the evidence in the lower court the plaintiff submitted one prayer for instruction to the jury, and the defendant offered seven prayers. Among the prayers offered by the defendant was one asking the Court to withdraw the case from the jury upon the ground that there was no legally sufficient evidence to entitle the plaintiff to recover under the pleadings. The Court refused all the prayers submitted by the respective parties, and granted two prayers of its own. The defendant excepted to the granting of these prayers, and also to the refusal of its prayers. As we are of opinion that the case should have been withdrawn from the consideration of the jury and a verdict directed for the defendant, it will not be necessary to discuss the questions aris-

ing upon the application for the policy. The declaration contained the common counts, and also a special count which set out the following provision of the policy:

> "The Mutual Life Insurance Company of Baltimore, in consideration of the representations in the application for this policy which are hereby made a part of this contract, and of the premium mentioned in the schedule mentioned below, and of a like premium to be paid weekly, hereby promises to pay, subject to conditions hereinafter set out, to Emma Willey, grandmother, or the person then appearing as beneficiary, upon the receipt of proofs of the death of the insured as hereinafter required, the sum of money stipulated in said schedule."

In the second condition of the policy it is provided that:
> "This policy shall be void if upon the date of actual delivery the insured is not alive and in sound health."

The evidence is clear and uncontradicted that at the time of the delivery of the policy and for a long time prior thereto the assured was suffering with tuberculosis, and knew that he was afflicted with this disease. He concealed this fact from the company, which would not have issued the policy had it known the insured's condition of health in this respect. Mrs. Willey, the plaintiff, who was present when the application for the insurance was signed by the insured, testified that her grandson had been treated at the State Sanatorium at Sabillasville before the agent solicited the insurance, and that he had been treated there for three weeks. Mrs. Amanda Spamm, who was also present at the time the application for insurance was made, testified that no mention of the fact that the insured was treated at Sabillasville was made either to the agent or to the company's physician who inspected the insured.

Dr. Charles A. Austriam testified that he saw the insured at the Phipps Dispensary on October 1, 1915, and made an

examination of him at that time, and that the examination showed that he had pulmonary tuberculosis, pleurisy with effusion and consolidation of the lower lobe. The insured entered the State Sanatorium, at Sabillasville, for treatment on the 22nd of November, 1915, and Dr. V. R. Claytor, one of the physicians in charge there, testified in examination in chief that "his sputum was positive and he had the positive tubercular laryngitis," and on cross-examination he said: "That he found loss of weight, temperature and high pulse and positive sputum, which were the clinical symptoms of tuberculosis. That the examination was made on November 22, 1915, and that every test made to discover tubercular trouble was responsive. That the only thing he personally found was the tubercular throat, but that the report, which is the result of the examination made by other physicians, shows that the patient was suffering from tuberculosis, and that in November, 1915, every known test discovered indications of tubercular trouble when applied to Walter E. Willey, and that he responded and showed symptoms of tuberculosis, was what was meant when he said he had all the clinical symptoms of tuberculosis."

Dr. Jacob Cohen testified that he saw the insured on June 23, 1917, at which time he had advanced tuberculosis, and that the outlook was hopeless.

Under the rules of the defendant company, its physician is not required to make an examination of the insured where the policy applied for is less than $300.00. The policy applied for in this case being for less than that amount, no examination was made. In such cases the physician makes what is called a personal inspection of the applicant, and that was done in this case. Dr. William L. Burke, the defendant's physician, testified that he did not make an examination of the insured for tuberculosis.

The provision as to the sound health of the insured contained in the policy was a reasonable and enforceable one. No general definition of unsound health in an insured can be given that would be applicable to all cases, and in many cases

that question should be left to the jury under appropriate instructions by the Court. The question is analogous to that of the falsity or materiality of representations contained in the application for the policy. These questions are ordinarily for the jury to determine, but, as was said by this Court in *Aelna Life Insurance Company* v. *Millar,* 113 Md. 686: "Where the bad faith of the applicant or the falsity and materiality of the misrepresentation is shown by clear and uncontradicted evidence, the Court may so rule as a matter of law; but where the evidence upon these questions is conflicting or doubtful they should be submitted to the jury. *Fidelity Mutual Life Insurance Company* v. *Ficklin,* 74 Md. 173; *Dulaney* v. *Fidelity & Casualty Company,* 106 Md. 17; *Mutual Life Insurance Company* v. *Rain,* 108 Md. 353; *Bankers' Life Insurance Company* v. *Miller,* 100 Md. 1; *Maryland Cas. Co.* v. *Gehrmann,* 96 Md. 634."

In *Volker* v. *Metropolitan Life Ins. Co.,* 1 Misc. Reports, 374, the policy contained the following provisions: "No obligation is assumed by the company prior to the date hereof, nor unless upon said date the assured is alive and is in sound health." It appeared that for upwards of three years the insured was afflicted with chronic asthma to such an extent that he was unable to pursue his usual calling, and that ailment, accompanied by subsequent and resultant complications, led to his death. The Court said: "No argument is required to demonstrate that it was the intention of the parties to the contract of insurance that the inception of the defendant's risk should be dependent upon the existence of certain conditions, to wit, that at the date of the policy the insured be alive and in sound health, and these failing, the defendant's liability under the policy never attached."

In *Packard* v. *Met. Insurance Company,* 72 N. H. 1, the Court, considering the same condition, said: "No obligation was assumed by the defendant unless the insured was alive and in sound health on the day of the date of the policy. The defendant's promise was not absolute, but conditional. The existence of life and sound health in the insured was a

condition precedent to the promise of insurance. But what is meant by the words 'sound health'? Evidently not perfect health. 'We are all born with the seeds of mortality in us.' No definition can be given of these words that will apply to all cases. A temporary indisposition or ailment would not ordinarily be regarded as rendering the health unsound within the meaning of these words when used in an insurance contract. Speaking generally, they mean the absence of any vice in the constitution and of any disease of a serious nature that have a direct tendency to shorten life; the absence of a condition of health that is commonly regarded as disease, in contradistinction to a temporary ailment or indisposition. *Cushman* v. *U. S. L. Insurance Co.,* 70 N. Y. 72, 77; *Brown* v. *Met. Life Ins. Co.,* 65 Mich. 306; *Metropolitan Life Ins. Co. v. Howle,* 62 Ohio St. 204."

In 14 *R. C. L.,* Sec. 250, it is said that: "Mere temporary ailments or affections, not of a serious or dangerous character, which pass away and are likely to be forgotten because they leave no trace in the constitution, are not to be regarded as diseases within the meaning of a life insurance policy, and this is true, though at the time the illness was considered serious. An anæmic murmur of the heart, which indicates no structural defect but comes from mere debility or weakness, is not a 'bodily or mental infirmity' within the meaning of the provisions of a policy of life insurance. Among the diseases which have been considered as serious may be mentioned aneurism, tuberculosis, gallstones necessitating an operation, hemorrhages of the stomach, renal colic, typhoid fever, and, under some circumstances, alcoholism; while among diseases not considered serious may be mentioned diarrhœa, dyspepsia, malaria, and intermittent headaches." See also *May on Insurance,* Sec. 295. In *Metropolitan Life Insurance Company* v. *Rain,* 108 Md. 353, the policy of insurance sued on contained the same provision as that found in the policy in this case. In that case the Court permitted the jury to pass upon the question whether at the time of the issuance of the policy the insured was suffering from

tuberculosis, because the Court found upon an examination of the record that the evidence was not of such a clear and satisfactory character as to justify it in deciding that question as a matter of law, but it affirmed the principle laid down in *Mutual Life Ins. Co.* v. *Mullan,* 107 Md. 457, to the effect that wherever the statements and answers in the application were shown to be false by clear, convincing and uncontradicted evidence, the Court may so rule as a matter of law." It can not be questioned that if the insured at the time the application for insurance was made was suffering from tuberculosis, he was not in sound health within the meaning of the policy, and where that fact appears, as it does in this case, by clear and uncontradicted evidence, it was the duty of the Court to withdraw the case from the consideration of the jury. It follows that the judgment appealed from must be reversed, and as no recovery can be had upon the policy a new trial will not be awarded.

*Judgment reversed, without awarding a new trial; the appellee to pay the costs.*