METROPOLITAN LIFE INSURANCE COMPANY, a corporation of the State of New York, Defendant Below, Plaintiff in Error, *v.* JOSEPH JACOBS, Administrator of the Estate of Mary Agnes Jacobs, Deceased, Plaintiff Below, Defendant in Error.

(*July* 28, 1938.)

WOLCOTT, Chancellor, LAYTON, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Ward* and *Gray* for Plaintiff in Error.

*George W. Lilly* and *Walter J. Willis* for Defendant in Error.

Supreme Court, No. 5, October Term, 1937.

RICHARDS, J., delivering the opinion of the Court:

There were ten assignments of error filed on behalf of the Plaintiff in Error, which can be reduced to three.

First, that the Court committed error by refusing to admit testimony as to the physical condition of the insured at the time the policies were issued, when such evidence showed a failure to comply with a condition precedent in the policies;

Second, that the Court committed error by failing to carry out the intention of the Legislature, by reading into *Section* 509 of the *Revised Code of Delaware* of 1935, the word "not" which was previously contained therein;

Third, that the ruling of the Court that *Section* 509 of the *Revised Code of Delaware* of 1935, prevented the introduction of evidence to show the breach of conditions contained in the policies of insurance, was a violation of the *Fourteenth Amendment* of the *Constitution of the United States*, with reference to the deprivation of property without due process of law.

The general principle that a party who seeks to recover upon a contract, must prove such facts as are necessary

to establish a compliance with conditions precedent thereto, cannot be denied.

All of the cases cited by counsel for the Plaintiff in Error clearly recognize it, but many of them can be distinguished from the case under consideration.

In *Karp v. Metropolitan Life Ins. Co.*, 86 *N. H.* 124, 164 *A.* 219, the policy contained provisions similar to the one in question, with respect to the insured being alive and in sound health on the date of its issuance, or having had heart disease prior to its date. It appearing from the evidence that upon the date of the policy, the deceased was afflicted with a valvular disease of the heart, the Court held the conditions precedent to liability under the policy were not fulfilled. But there does not appear to have been involved a statute providing that the application should be a part of the policy and requiring that it be attached thereto when delivered. In the case of *Sack v. Metropolitan Life Ins. Co. (Pa.)*, 175 *A.* 733, the Court held that the question was not as to the apparent soundness of the insured's health at the time the policy was issued, the documentary evidence that she had had cancer being uncontradicted. In *Mutual Life Insurance Co. of Baltimore v. Willey*, 133 *Md.* 665, 106 *A.* 163, the Court of Appeals held that the case should have been withdrawn from the jury because it appeared by uncontradicted evidence, that at the time of the application for insurance, the insured was suffering from tuberculosis. The case of *The Prudential Insurance Company of America v. Litzke*, 6 *W. W. Harr.* (36 *Del.*) 592, involved a question of the sufficiency of the proof of claim. Likewise in the case of *Holtz v. New York Life Insurance Co.*, 7 *W. W. Harr.* (37*Del.*) 1, 179 *A.* 497, the question raised on demurrer was whether it was necessary to allege proof of disability in the declaration. We are dealing in the case under consideration with a statute making the application a part of the policy, and requiring that it shall be delivered with,

incorporated in, or attached thereto. The question of what constitutes a condition precedent to the plaintiff's right to recover under the terms of the policy has no application.

It is contended on behalf of the defendant, that the statute relied upon by the plaintiff as originally passed in 1913, and as found in *Volume* 27 of the *Laws of Delaware,* at *Chapter* 91, contained the word "not" in the last line of the third paragraph, reading as follows: "in default of which no defense shall be allowed to said policy on account of or by reason of anything contained in or omitted from such application and *not* contained in the policy issued thereon"; that it was reenacted with that language in the *Code* of 1915, and continued to so read until 1931 when the Legislature codified the insurance laws of the state, leaving out the word "not" as shown by *Volume* 37 of *Delaware Laws* at *Chapter* 52. The contention is further made, that this omission appeared for the first time in *Volume* 37 of the *Delaware Laws;* but it is admitted that it appeared again in the codification of the laws in 1935, and that the law remains in the same form notwithstanding the subsequent sessions of the Legislature.

Our Court has adopted the rule in the construction of statutes, that effect must be given to every word, sentence and clause thereof; all of their provisions being recognized so that no part will become inoperative.

*Harlee v. The Federal Finance Corp., 4 W. W. Harr.* (34 *Del.*) 345, 152 *A.* 596; *Washington Federal Ins. Co. v. Burton,* 287 *U. S.* 97; *Sutherland Statutory Construction,* 2 *Ed., Sec.* 38.

It was argued that the word "not" was inadvertently omitted from the statute; that such omission not only nullified its intent and purpose, but that in order to give it the intent and purpose it clearly expresses, the statute must be construed by inserting "not" in the last clause.

Sutherland on Statutory Construction, says: "When one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied. This is but making the strict letter of the statute yield to the obvious intent".

*Sutherland Stat. Construction, 2 Ed., Sec.* 260.

The same author further says: "To enable the court to insert in a statute omitted words, the intent thus to have it read must be plainly deducible from other parts of the statute".

The statute which first omitted the word "not" was passed for the purpose of revising and consolidating the laws regulating the insurance business in this state. The wide scope of its purpose appears from the title of the Act which reads, "An Act to amend, revise and consolidate the laws regulating the business of Insurance in this State, and for this purpose to repeal certain existing Laws relating to the business of Insurance, and to substitute for the same the revision and consolidation set forth in this Act, such revision and consolidation to become and be *Chapter* 20 of *Title Six of the Revised Code of the State of Delaware* of 1915". It is not unreasonable to assume that an act of this character was drafted by some one who was familiar with the insurance laws of the state, and that each provision thereof was carefully considered. One who is familiar with the great mount of fine print found in the insurance policies in general use, will recognize the importance of legislation intended to call to the attention of the insured all of the features of his contract. The applcation for insurance is an important step in the formation of the insurance contract, and it was doubtless for this reason that the law required that it should be "delivered with, incorporated in, or attached to each policy" issued in this state.

The Statute then provides that if this requirement is not met, no defense shall be allowed to the policy by reason of anything contained in or omitted from the application and contained in the policy. It is contended that this provision renders the statute absolutely meaningless, and that in order to give it the effect intended, it should read, no defense shall be allowed to the policy by reason of anything contained in, or omitted from the application and *not* contained in the policy.

Attention is called to that section of the statute, which declares that the intention thereof is to effect only the remedy and procedure in enforcing claims upon life insurance policies.

With the omission of the word "not" the insurance company is still required to furnish the insured with a copy of the application. If it fails to do this it is not allowed to make any defense to the policy by reason of anything contained in or omitted from said application and contained in the policy.

With the word "not" included, the insurance company still is required to furnish the insured with a copy of the application, but if it fails to do so, it is denied the right to make a defense by reason of anything contained in or omitted from the application and not contained in the policy.

The statute does not read as smoothly with the word "not" omitted, but it cannot be said that it is ambiguous or unintelligible. We can understand that the legislature may have thought it necessary to go to that extent in order to fully protect those citizens of the state who enter into life insurance contracts. We are not unmindful of the fact, that in the case of *Winter v. Hindin,* 3 *W. W. Harr.* (33 *Del.*) 294, 136 *A.* 280, this Court read eight words into the statute pertaining to the landlord's right to distrain for rent; but we think that case can be distinguished from the

one under consideration. In that case the Court traced the history of distraint for rent from Colonial days, and showed that by leaving out the words in question, as was done by the Legislature in 1925, the policy, usage, and recognized law of the State since that period would be changed.

Upon the facts shown in this case we are not convinced that the word "not" should be inserted in the statute above referred to.

The further argument is made, that if the construction contended for by the Plaintiff in Error is not adopted by reading the word "not" into the last clause of that section of the statute under consideration, it will be prevented from offering any defense, which will amount to a taking of property without due process of law in violation of the *Fourteenth Amendment* of the *Constitution* of the United States. It was admitted in this case that the application was not delivered with, incorporated in, or attached to the policy in question; consequently the Plaintiff in Error was not allowed to introduce any evidence referring to anything contained in or omitted from said application and contained in the policy. It was, therefore, barred from showing what the insured's physical condition was at the time the policies were issued.

But it cannot be denied that the desired testimony could have been produced, if said application had been delivered with, incorporated in, or attached to the policies. Nor has it been shown that there were any unusual circumstances connected with the application and issuance of these policies, which in any way interfered with a compliance with the provisions of the statute or rendered it more difficult.

The principle laid down by the Courts of this State in the case of *State v. Fountain*, 6 *Penn.* 520, 69 *A.* 926, *State v. Grier*, 4 *Boyce* 322, 89 *A.* 579, and *Fouracre v. White*, 7

*Boyce* 23, 102 *A.* 186, to the effect that where a statute is capable of two constructions, one of which will render it invalid and the other valid, the validity of the statute will be upheld, must be admitted. But that situation does not exist in this case.

Likewise in the case of *Hovey v. Elliott,* 167 *U. S.* 409, relied upon by counsel for the Plaintiff in Error, the question was not the same as the one under consideration. In that case, the defendant having been adjudged in contempt by the Supreme Court of the District of Columbia, it was ordered that his answer in a matter pending in that Court against him be stricken from the files and judgment entered against him. The Supreme Court of the United States held that the defendant by this proceeding was denied the right to be heard in his own defense which constituted taking of property without due process of law.

In *Wolfe Packing Company v. Court of Industrial Relations of the State of Kansas,* 267 *U. S.* 552, also cited on behalf of the Plaintiff in Error, we find a different situation to have existed. There an appeal was taken from a decision of the Supreme Court of Kansas upholding an order of the Court of Industrial Relations determining a dispute respecting wages, hours of labor, and working conditions in a slaughter house and packing plant owned and operated by the appellant. The Supreme Court of the United States held that the Industrial Court Act in so far as it permitted the fixing of wages in the appellant's packing house was in conflict with the *Fourteenth Amendment,* and deprived it of its property without due process of law.

Again in the case of *Traux v. Corrigan,* 257 *U. S.* 312, being another case relied upon in the appellant's brief, we are unable to find the same in point. In this case a dispute arose between the plaintiffs and the union which the defendants belonged to concerning the terms and conditions of

employment of the members of the union. Plaintiffs refused to comply with the terms of the union, and it thereupon ordered those of its members who were employed in the plaintiffs' restaurant to strike. In their effort to win the strike and compel the plaintiffs to accept their terms they entered into a conspiracy to injure the plaintiffs' restaurant business and in consequence thereof picketed the same. The Supreme Court of the United States reversed a decision of the Supreme Court of Arizona upholding the constitutionality of an act of the Legislature of Arizona providing that no restraining order or injunction should be granted by the Courts of that State, in any case between the employer and employee, involving or growing out of a dispute concerning terms or conditions of employment.

That which prevented the Plaintiff in Error from making the desired defense in this case was its own act of failing to deliver with, incorporate in or attach to the policies the application made by the insured. Why it did not comply with these provisions of the statute we are unable to say and no explanation has been given. The applications were in its possession and no act of the insured could have prevented it from so complying with the terms of the statute if it had desired to do so. The same principle invoked here is invoked in a contract which the statute of frauds requires to be in writing and which, therefore, in most cases, cannot be relied on or proved unless that statute is complied with. Nor could it be successfully contended that such a statute in any way violated the *Fourteenth Amendment* to the *Constitution* of the United States.

We are of the opinion that the judgment below should be affirmed.