MUTUAL LIFE INS. CO. OF NEW YORK *v.* SHOEMAKE.

[89 South. 154. En Banc. No. 21855.]

1. INSURANCE. *When contract of insurance consummated stated.*
   In the absence of an agreement to the contrary, the acceptance of an application for insurance, when communicated to the insured, consummates the contract, without an actual delivery of

32

the policy; but, if the application expressly provides that the policy shall not become effective unless and until delivered and received by the insured while in good health, the contract will not be consummated until the policy is so delivered and received.

2. INSURANCE. *Delivery of policy to agent for delivery to insured not a delivery, where agent refuses to deliver to insured while sick.* Where the application for insurance provides that the policy shall not become effective unless and until delivered to and received by the insured while in good health, the policy, although executed by the insurer and delivered to its agent, for delivery to the insured, does not become effective, if the agent declined to deliver it when called for, and the insured is then sick at a hospital, under the treatment of a physician, and the insurer's general instructions to its agent were not to deliver policies unless the applicant is in good health, and in case of change in the applicant's health to return the policy to the insurer, with a statement of facts, for instructions as to whether delivery should be made, and, if so, upon what conditions.

ANDERSON, J., dissenting.

APPEAL from circuit court of Wayne county.

HON. J. D. FATHEREE, Judge.

Action by Belva Lottie Shoemake against the Mutual Life Insurance Company of New York.    Judgment for plaintiff, and defendant appeals.    Reversed and rendered.

*Fulton Thompson, J. Harvey Thompson* and *Robert H. Thompson,* for appellant.

We affirm the following propositions upon the undisputed facts of the case; appellant is not liable: (1) Because the policies were never actually delivered to the applicant during his lifetime and good health, as required by the terms of the application before any liability could attach, nor was there à constructive delivery because the applicant was not entitled to delivery without payment of the premium for the first policy years. (2) There was no acceptance or reception of the policy, either actual or implied, by the applicant who never saw the policies or either of them.    Reception and acceptance by the applicant are

likewise conditions precedent to any liability under the terms of the application.   (3) The premium for the first policy year was never paid and this payment was also required before any liability could arise, both  under the terms of the application and by virtue of the instructions to agents by the company, shown by the rules.

Actual delivery to applicant essential to liability.   1 Joyce on Insurance, sec. 98; 1 Bacon Benefit Societies (3 Ed.), sec. 272; May on Insurance (4 Ed.), sec. 60; *Yount* v. *Prudential Ins. Co.,* 179 S. W. 749; *McCully* v. *Phoenix Mut. Life Ins. Co.,* 18 W. Va. 782; *Snediker* v. *Metropolitan Life Ins. Co.,* 169 S. W. 570; *New York Life Ins. Co.* v. *Manning,* 142 N. Y. S. 1132; *Lasch* v. *New York Ins. Co.,* 155 N. Y. S. 225; *Bowen* v. *Prudential Ins. Co.,* 51 L. R. A. (N. S.) 587; s. c. 144 N. W. 543; *John Hancock Mutual Life Ins. Co.* v. *McClure,* 218 Fed. 597; *Porter* v. *Gen. Acc. Fire & Life Assur. Corp.,* 30 Cal. App. 198; *McNicol* v. *New York Life Ins. Co.,* 149 Fed. 141; *Union Cent. Life Ins. Co.* v. *Pauly,* 8 Ind. App. 85; s. c. 35 N. E. 190; *New York Life Ins. Co.* v. *McIntosh,* 41 So. 381; s. c. 86 Miss. 236; *Hawley* v. *Michigan Mut. Life Ins. Co.,* 92 Iowa 593.

Decisions holding the acceptance of an application consummates a contract not applicable to the case at bar. The cases holding that the acceptance of an application consummates a contract, are all cases of unconditional acceptance, where there are no provisions in the application, or policy, or elsewhere, conditioning or qualifying the acceptance, or where such condition had been complied with.   Such are the following and other cases relied upon by appellee in the circuit court:   *Kimbro* v. *N. Y. Life Ins. Co.,* 121 L. R. A. (N. S.) 421; *Cooper* v. *Pacific Mutual Ins. Co.,* 8 Am. Rep. 705; *Commercial Ins. Co.* v. *McIntosh,* 41 So. 381; s. c. 86 Miss. 236; *Alabama Life Ins. Co.* v. *Herron,* 56 Miss. 643; *McMaster* v. *New York Life Ins. Co.* (U. S. Sup. Ct.), 46 L. Ed. 61; *Unterharnscheidt* v. *Missouri State Life Ins. Co.,* 45 L. R. A. (N. S.) 743.

Soliciting agents are without power to change the terms or make a contract of insurance.   A soliciting agent has

no power to change the terms of or make a contract of insurance, and limitations of agents' powers contained in the contract are binding on the applicant. _Truly_ v. _Mutual Life Ins. Co.,_ 66 So. 970; s. c. 108 Miss. 453; _Insurance Co._ v. _O'Don,_ 100 Miss. 219; _Lasch_ v. _New York Ins. Co.,_ 155 N. Y. 255; _National Union Fire Ins. Co._ v. _School Dist.,_ 182 S. W. 547; _Porter_ v. _Gen. Acc. Fire & Life Ins. Co.,_ 157 Pac. 825; _Russell_ v. _Prudential Ins. Co.,_ 176 N. Y. 178; _McNicol_ v. _N. Y. Life Ins. Co.,_ 149 Fed. 141.

Instructions to agents have probative force to show that a contract was not consummated although not communicated to applicant. Instructions given by the company to its agents regarding delivery of the policy are admissible in evidence, though not communicated to the applicant. They are not admitted for the purpose of varying a written contract, but to show that no contract was ever consummated. _Brago_ v. _Prudential Ins. Co.,_ 184 Ill. App. 618; _John Hancock Mutual Ins. Co._ v. _McClure,_ 218 Fed. 597; _McCully_ v. _Phoenix Mut. Life Ins. Co.,_ 18 W. Va. 782.

The approval of an application and the writing of a policy do not necessarily prove a complete contract of insurance, but as a rule the policy must be accepted by the applicant. 25 Cyc. 722; _Hoghen_ v. _Metropolitan Life Ins. Co.,_ 69 Conn. 503; _Jones_ v. _Gilbert,_ 93 Ga. 604; _Russel_ v. _Prudential Ins. Co.,_ 176 N. Y. 178; _McNicol_ v. _N. Y. Life Ins. Co.,_ 149 Fed. 141.

_Stevens & Heidelberg,_ for appellee.

We submit that if the insured was in good health, within the meaning of the terms in the policy, at the time the tender of the premiums was made by his brother-in-law, Mr. Holston, to the agent at Laurel, then that the delivery of said policies became and was completed, even though it might be true that the paper upon which they were written was never in fact handed to or accepted by the insured. Counsel for appellant argue very strenuously in their brief that an actual delivery of the paper upon

which the policy is written is essential to the completion of the contract of insurance. However, we submit that in this they are mistaken. This exact proposition has been passed upon by our own supreme court in the case of *Alabama Gold Life Ins. Co.* v. *Herron,* 56 Miss. 645; *New York Life Ins. Co.* v. *Babcock,* 104 Ga. 67; Am. St. Rep. 134.

One of the very latest cases on this point is that of *Chapman* v. *Mutual Life Ins. Co. of New York,* 83 So. 887; 1 Joyce on Insurance, page 428, 462; *Yonge* v. *Equitable Life Assur. Soc.* (C. C.), 30 Fed. 902; *Mutual Life Ins. Co.* v. *Reid,* 21 Colo. App. 143, 121 Pac. 132; 63 L. R. A. 740; 23 L. R. A. (N. S.) 969; 52 L. R. A. (N. S.) 276; 14 R. C. L. 899; *Going* v. *Mutual Benefit Life Ins. Co.,* 36 S. E. 556.

Counsel for appellant rely on this point on the case of *McKenzie* v. *The Northwestern Mutual Life Insurance Co.,* 105 S. E. 720, wherein the supreme court of Georgia held that a tender of the first premium during the last illness of the insured did not in that case complete a delivery of the policy. However, the court based its reason for so holding, not on the fact that an actual delivery of the policy was necessary nor an actual receipt of the money by the agent of the insurance company necessary, but it held that the delivery was not complete for the reason that the applicant's condition of robust health and probable long life had changed to one of dangerous illness and imminent death. In other words, in the McKenzie case above cited the court held that the tender of the premium during the last illness of the insured did not complete the execution of the contract for the reason that at the time the tender was made and the policy demanded, the insured was not in good health. 25 Cyc. 725, citing *Going* v. *Mutual Benefit Life Ins. Co.,* 36 S. E. 556.

The next question involved in the case, as we see it, is whether or not the insured was in good health at the time of the tender of the premium and demand of the policy by Mr. Holston. If he was in good health within the meaning of that term as used in the policy, then unquestionably the contract of insurance was completed when the

tender of the premium was made, and upon the death of the insured the beneficiary named in the policy became and was entitled to recover the full amount thereof. What is the meaning of good health as used in a policy of life insurance? It does not mean a state of absolute perfection. If it did, none of us would ever be eligible for life insurance.

Slight troubles, temporary and light illness, infrequent and light attacks of illness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health. In other words, the term "good health" when used in a policy of life insurance means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system." 4 Words and Phrases, 312, citing *Barnes* v. *Fidelity Mutual Life Ass'n,* 43 Atl. 341, 342, 191 Pa. 618, 45 L. R. A. 264 (citing 3 Joyce, Ins. 2004); *Goucher* v. *Northwestern Traveling Men's Ass'n* (U. S.), 20 Fed. 596, 598; *Provident Sav. Life Assur. Soc. of New York* v. *Beyer* (Ky.), 67 S. W. 827, 828; *Hann* v. *National Union,* 56 N. W. 834, 836, 97 Mich. 513, 37 Am. St. Rep. 365; *McDermott* v. *Modern Woodmen of America,* 71 S. W. 833, 837, 97 Mo. App. 636; 4 Words and Phrases, 3123; *Barnes* v. *Fidelity Mut. Life Ass'n,* 45 L. R. A. 264; 37 Am. St. Rep. 365; 10 Am. St. Rep. 240. See, also, note on page 634 of 3 Am. St. Rep. See, also, case of *Citizens' Nat. Life Ins. Co.* v. *Sword,* 68 So. 920; *Insurance Co.* v. *Elmore,* 71 So. 305. And so we say that at the time of the tender of the premium at a time when the insured was entitled to a delivery of the policy, he was in good health within the meaning of that term as used in the policy and as defined in the above decisions.

Counsel for appellant devote a great deal of space in their brief to arguing the proposition that it was necessary that the policy of insurance must have been accepted by the insured during his lifetime. This position by appellant would be well taken if the insurance company had

not accepted the application of the insured without qualification. Had they in any way changed the terms of the policy which had been applied for, then it would have been necessary before the contract became complete, for the applicant to have agreed to the change; but where the application was accepted and approved without change and without modification, the minds of the parties had met and no actual acceptance further on the part of the insured was necessary.

We further submit, that to permit the insurance company in this case to set up as a defense to this suit the fact that the insured had tonsilitis or was not in good health at the time of the tender of the premiums and delivery of the policy, would be to permit the insurance company to take advantage of its own wrong and its own negligence. This policy of insurance had been sent to the agent many weeks before the actual tender of the premiums, with instructions to deliver it to the insured. The insured lived only a few miles from the place of business of this agent; he was at home and if any sort of effort had been made on the part of the agent to have complied with the instructions given him by his own principal these policies of insurance would have been delivered and the premiums thereon paid long before the insured was ever affected with tonsilitis. The proof shows that at all times after the making of this application the insured had the money with which to pay the premiums; that he had money set aside for that purpose; that he himself was making effort to get possession of the policies and pay the premiums, and the only reason the policies were not actually delivered and the premiums actually paid long before he ever contracted tonsilitis was because of the negligence of the defendant itself in failing to notify him that the policies were ready for delivery.

We call the court's attention again to the case of *New York Life Ins. Co.* v. *Babcock,* 69 Am. St. Rep. 134. In conclusion, we submit that the facts in this case show that there was a constructive delivery of the policy to the in-

sured at a time when he was in good health within the meaning of that term as used in the policies, this delivery becoming completed upon the tender of the premiums to the agent of the insurer; and that thereupon the insurance became effectual and binding upon both parties, and upon the death of the insured the plaintiff herein became and was entitled to recover the full amount of the insurance policies; and that even if we are mistaken in our contention that insured was in good health at the time of this tender, yet that the policies of insurance became effectual even before that time, because, to hold otherwise, would be permitting the defendant to take advantage of is own negligence. Or, to state it a different way: That inasmuch as the insured was ready, able and willing, before he became affected with tonsilitis, to pay the first premiums and accept the policies; and inasmuch as the agent of the defendant negligently failed to deliver the policies to him or notify him of the fact that he had them ready for delivery before the insured became affected with tonsilitis, then that the insurance company, on account of the negligence of its own agent, became and is estopped to now say that the insured was not in good health at the time the policies were delivered.

For the foregoing reasons, we submit that the judgment of the lower court should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment awarding the appellee a recovery on two insurance policies on the life of her deceased husband. The facts are that on March 6, 1906, Shoemake applied 'in writing to Edwards, a soliciting agent for the appellant, for two policies of insurance for one thousand dollars each, payable to the appellee, his wife. This application among other things, provides:

"The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy shall

have been delivered to and received by me during my continuance in good health."

Edwards forwarded the application to the appellant's agent at Meridian, under whom he was working, who forwarded it to the appellant. On March 12th the policies were issued by the appellant and mailed to its agent at Meridian, accompanied by a letter reading as follows:

"Referring to application No. 745, R. V. Shoemake, delivery of policy [ies] herewith is subject to referee's requirements, and statement signed by applicant that he does not do any rafting or driving logs."

Paragraph 40, under the caption "Delivery of New Policies," of a book of "Rules, Regulations, and Instructions," issued by the appellant to its agents for their government in the transaction of its business, is as follows:

"*Not to be delivered.*—A policy must not be delivered, nor the initial premium accepted, unless the applicant is in good health and his occupation as stated in application remains unchanged. This rule applies, regardless of the fact that the premium may have been previously collected. In any case of change in the applicant's health or occupation, the policy must be returned at once to the manager with a statement of facts, that he may ascertain from the company whether the policy should or should not be delivered, and, if delivered, upon what conditions."

On receipt of the policies the appellant's Meridian agent forwarded them to Edwards at Laurel, Miss. Shoemake, who was an employee of the Warsaw Southern Lumber Company, told Edwards, when he applied for the policies, that if he was not at the lumber company's camp, which was near Laurel, when the policies were ready for delivery, to leave them with Clayborn Bush, the lumber company's paymaster. Edwards gave the policies to Bush for delivery to Shoemake on payment of the first premium. Bush held the policies for several weeks, at the expiration of which time, Shoemake having failed to call for them, he returned the policies to Edwards. On March 31st or April 1st, Shoemake became ill with a throat trouble which the ap-

pellee and the witness Holster, hereinafter referred to, stated to be tonsilitis, and went to a hospital, where his throat was lanced, and where he died after remaining there six days. A physician testified that tonsilitis is not of itself a serious malady, but could become so by the tonsils becoming infected. After Shoemake had gone to the hospital, and after his throat had been lanced, Holster, a brother of the appellee, called on Edwards and asked for the policies, offering to pay the premium due on them. According to Holster, he was then asked by Edwards if Shoemake was sick, and he informed Edwards that Shoemake was sick with tonsilitis. According to Edwards, he was informed by Holster that Shoemake was dangerously ill with some kind of throat affliction. Edwards then declined to deliver the policies, and returned them to the appellant's Meridian agent, who returned them to the appellant. Shoemake's employment did not require him to "do any rafting or driving logs;" but no statement to that effect, signed by Shoemake, was demanded by Holster by Edwards.

One of the assignments of error brings under review the refusal of the court below to direct a verdict for the appellant. The ground on which this ruling is sought to be upheld by the appellee is that, the policies having been issued and forwarded to Edwards for delivery, the contract of insurance was consummated and the policies became effective when the premium to be paid thereon was tendered by Holster to Edwards. In the absence of an agreement to the contrary, the acceptance of an application for insurance, when communicated to the insured, consummates the contract without an actual delivery of the policy. *Insurance Co.* v. *Herron,* 56 Miss. 643. But in the case at bar the appellant's acceptance of the application for insurance was not communicated to Shoemake, and, in addition, the application expressly provides that the policies should not become effective unless and until delivered to and received by Shoemake while in good health. Consequently,

unless they were so delivered and received, the policies did not become effective.

The contention of the appellee is that the delivery of the policies by the appellant to its agent with instructions to deliver them to Shoemake is in law a delivery to Shoemake, subject only to the payment by him of the premium thereon. It has been held, and we will assume for the sake of the argument, that the delivery of a policy by an insurer to its agent, with unconditional instructions to deliver it to the insured, is in effect a delivery to the insured; but this rule can afford the appellee no relief, for, leaving out of view the effect of Shoemake's illness would have had on the policies, had they been actually delivered to Holster by Edwards, and leaving out of view, also, the appellant's special instructions to its agent that the delivery of the policies "is subject to the referee's requirements," etc., the agent's general instructions were not to deliver policies "unless the applicant is in good health, and . . . in any case of change in the applicant's health or occupation, the policy [ies] must be returned at once to the manager, with a statement of facts, that he may ascertain from the company whether the policy [ies] should or should not be delivered, and, if delivered, upon what conditions."

· Assuming that the only information given to Edwards by Holster relative to Shoemake's illness was that Shoemake was ill with tonsilitis, nevertheless the fact is that Shoemake had then undergone a surgical operation upon his throat, and his condition was such as to require continued medical treatment. Whether this condition of Shoemake was correctly reported to Edwards or not is not material, for, had he inquired further, he would have ascertained Shoemake's actual condition, which was such as to make it the duty of Edwards, under his general instructions from the appellant, to return the policies to the appellant's "manager, with a statement of facts, that he may ascertain from the company whether the policy [ies] should or should not be delivered, and, if delivered, upon what conditions."

Edwards' refusal to deliver the policies to Holster was therefore correct; consequently they never became effective, and the request of the appellant for a directed verdict should have been granted.

Reversed, and judgment here for appellant.

*Reversed.*

Anderson, J. (dissenting).   I am unable to bring myself to agree with the majority opinion that there should have been a directed verdict, and judgment for the appellant in the trial court.   The application of the insured was accepted by the appellant, and policies issued in accordance therewith, for delivery to the insured upon the following conditions (quoting from the application) :

"The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy shall have been delivered to and received by me during my continuance in good health."

There is this provision in the policies: "This policy and the application therefor, copy of which is indorsed herein or attached hereto, constitute the entire contract between the parties hereto."

Under this stipulation in the policies and in the application therefor, any rules, regulations, or conditions are eliminated from consideration; and this is true as to any correspondence between the appellant and its agent in forwarding the policies for delivery.   In order to complete the contract, it was only necessary for the insured to pay the first premium while in good health.   It is conceded that the first premium was tendered by the brother-in-law of the insured as his agent; but the court holds that because of the fact that the insured was suffering with an attack of tonsilitis, the agent of appellant had the right to refuse to deliver the policies.

The question is whether or not, at the time the tender was made by the agent of the insured, he was in good health, in the meaning of that term as used in the policies

and construed by the courts. The question as to what constitutes good health, as used in life insurance policies, is not a new one. Many courts have construed that provision. Good health in such policies means that the insured is not affected with any substantial attack of illness, or with any malady that has a bearing on his general health. It does not mean perfect health, nor does it mean that the insured is free from any and all ailments, which do not ordinarily result in death or seriously affect the soundness and healthfulness of the human system. In 4 Words & Phrases, p. 3122, the principle is stated thus and authorities cited to support it:

"Slight troubles, temporary and light illness, infrequent and light attacks of illness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health. In other words, the term 'good health,' when used in a policy of life insurance, means that the applicant has no grave, important, or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. *Barnes* v. *Fidelity Mut. Life Ass'n*, 43 Atl. 341, 342, 191 Pa. 618, 45 L. R. A. 264 (citing 3 Joyce, Ins., section 2004) ; *Goucher* v. *Northwestern Traveling Men's Ass'n* (U. S.), 20 Fed 596, 598; *Provident Sav. Life Assur. Soc. of New York* v. *Boyer* (Ky.), 67 S. W. 827, 828; *Hann* v. *National Union*, 56 S. W. 834, 836, 97 Mich. 513, 37 Am. St. Rep. 365; *McDermott* v. *Modern Woodmen of America*, 71 S. W. 833, 837, 97 Mo. App. 636.

"The term 'good health' in a life insurance policy is comparative; and an assured is in good health unless affected with a substantial attack of illness threatening his life, or with a malady which has some bearing on the general health. It does not mean in perfect health; nor would it depend upon ailments slight, and not serious, in their natural consequences. *Manhattan Life Ins. Co.* v. *Carder* (U. S.), 82 Fed. 986, 989, 27 C. C. A. 344; *Galbraith's Adm'r.* v. *Arlington Mut. Life Ins. Co., etc.*, 75 Ky. (12 Bush), 29, 39; *Mason's Benefit Society* v. *Winthrop*, 85 Ill.

537, 541; *Maine Benefit Ass'n.* v. *Parks,* 16 Atl. 339, 340, 81 Me. 79, 10 Am. St. Rep. 1102, 1104, 97 Me. 176."

At the time the brother-in-law of the insured tendered the premium and demanded the policies of the agent of appellant, the insured had an attack of tonsilitis and was in a hospital, and on that day, or the day before, his tonsils had been lanced, and six days thereafter he died, supposedly from an infection. Dr. Lomax testified that tonsilitis was not a serious ailment—in fact, not any more serious than an aching tooth with pus at the root of it—but might become serious from the entering of some infection. If, in the meaning of the application and the policies, the insured was in good health when this tender was made, that completed the contract, and he was entitled to the policies, notwithstanding he died six days afterwards. Under the evidence in this case it seems plain that the question whether he was in good health, or not, when the tender was made, was a question for the jury, and not the court.