Fidelity Mutual Life Insurance Company *v.* Elmore.

[71 South. 305.]

Insurance. *Avoidance of policy. Statements as to health.*

Under a policy of insurance providing that all statements of the insured shall, in the absence of fraud, be deemed representations and not warranties; on the death of the insured the company

cannot successfully resist the payment of the policy on the ground that the insured in his application and when the policy was delivered, stated that he was in good health if such statements were made in good faith and believed to be true, and with no intention to commit a fraud, even though at the time of the application and delivery of the policy, the insured had tuberculosis and his death was subsequently caused by this disease.

Appeal from the circuit court of Grenada county.

Hon. J. A. Teat, Judge.

Suit by L. R. Elmore, administrator, against the Fidelity Mutual Life Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*McLean & Carothers,* for appellant.

We plank this case squarely upon two propositions, both of which are admitted to be true: First, the deceased at the date of the delivery of the policy was not in good health. This voids the policy absolutely, or rather by reason of this fact, the policy never had any legal effect—the applicant being in good health was a condition precedent to the validity of the policy. This is true according to all of the authorities, and must follow from the rule laid down by this court in *Fidelity Mutual Life Insurance Company* v. *Miazza,* 93 Miss. 18, and also from the recent opinion of this court in *Col. K. P.* v. *Seay,* 63 So. 571, the question of good or bad faith, the question as to knowledge or want of knowledge upon the part of the appellant or the company, has nothing whatever to do with the question. The sole question is—was the applicant at the date of the delivery of the policy in good health? If not, then by the express terms of the policy, it was void *ab initio* nothing can breathe into this worthless and dead thing the breath of life. In order for the plaintiff to recover, he can recover not upon the policy sued on, but upon one which the court makes for him. The courts do not make contracts, but simply enforce them.

Second, if the applicant at the date of the application made a false statement, which was material to the risk, although he believed the statement to be true, then the policy is void. This is squarely settled by this court in the *Miazza case, supra,* and is in accord with the great weight of authority. The above are the two propositions upon which we seek a reversal.

Appellant relies upon the following authorities: *Fidelity Mutual Life Ins. Co.* v. *Miazza,* 93 Miss. 18; *Grand Lodge Col. K. of P.* v. *Seay,* 63 So. 571; *Fidelity Mutual Life Ins. Co.* v. *Miazza,* 93 Miss. 422; *Co-op. Association* v. *Leflore,* 53 Miss. 185; *Prewitt* v. *State,* 63 So. 330, Judicial notice; *Notes* to *Green* v. *Lineville Drug Co.,* 124 Am. St. Rep. 44, et seq.; *Austin* v. *Mutual Reserve Fund Life Assn.* (Mass.), 132 Fed. 555; *Carmichael* v. *John Hancock Mutual Life Ins. Co.,* 166 App. Div. 291, 101 N. Y. Supp. 602; *Metropolitan Life Ins. Co.* v. *Howle,* 62 Ohio St. 204, 56 N. E. 908; *Packard* v. *Mut. Life Ins. Co.,* 72 N. H. 1, 54 Atl. 287; *Mutual Reserve Fund Life Assn.* v. *Opp,* 30 So. 69; *Lee* v. *Prudential Ins. Co.,* 203 Mass. 290; *Powell* v. *Prudential Life Ins. Co.* (Ala.), 45 So. 208; *Gallant* v. *Metropolitan Life Ins. Co.,* 167 Mass. 77, 44 N. E. 1073; *New York Life Ins. Co.* v. *Odom,* 100 Miss. 219; *Slocum* v. *Ins. Co.,* 228 U. S. 364; *Aetna Ins. Co.* v. *Mount,* 90 Miss. 642; 25 Cyc. 805-806, 810-811-812; *Knights of Maccabees* v. *Shields,* 49 L. R. A. (N .S.) 853, 157 Ky. 35, 162 S. W. 778.

*B. L. Mayes,* for appellee.

In our preceding brief, replying to counsel's contention that "If the applicant made a false statement, which was material to the risk, although he believed the statement to be true, then the policy is void," we pointed out that this contention begged the whole question. We hold to our views there expressed, and insist upon their soundness, but even if it be conceded that the contention is not thus fatally defective, still, there is no practical gain. The

whole argument is a misfit. It ignores the only thing to be noticed P. the written contract between the parties, the terms and provisions of the policy itself. The law of the contract is the contract itself, and the policy in suit expressly provides:

"ALL STATEMENTS MADE BY THE INSURED SHALL IN THE ABSENCE OF FRAUD, BE DEEMED REPRESENTATIONS AND NOT WARRANTIES."

This identical provision was construed by this court in *Citizens Nat. Life Ins. Co.* v. *Swords,* 68 So. 920, where counsel for the appellant company made exactly the same argument as is now being pressed.

As to the second point in this case, we respectfully submit that the reply brief of counsel is not even responsive. It does not pretend to answer the very material proposition that the term "continued good health" is a relative term, depending for its precise meaning on the circumstances of its use. It does not pretend to answer our argument as to what those circumstances were. It does not pretend to answer the proposition that the effect which the applicant's health, before and at the time he made his application, and his statement relative thereto, are expressly provided for by other provisions; and to construe the clause in question so as to extend it back over that time would necessarily make those stipulations mere surplusage. Instead, the brief falls back on the lame statement that "there are two things wrong with counsel's argument on this point. The first is that it is unsound, and the second is that the courts are against him." Not a single case is cited in support of this statement. Not a single case cited in their original brief supports it. What the courts may have held to be the effect of a provision requiring delivery during "good health" is entirely beside the question. The policy in suit does not require this. It calls merely for delivery during "continued good health;" and the importance, in this connection, between "good health" and "continued good

health'' is obvious and unquestionable. "Good health" may or may not mean a freedom from serious ailment, but "continued good health" manifestly does not stipulate for anything, except a continuation of a state of health that has previous or elsewhere been considered or passed as "good." Its object here was obviously to enforce a delivery of the policy to the same man who applied for it. Yet, as important as this difference between the two terms is, both briefs of counsel for appellant completely ignore it; cases are cited in their brief on the meaning of the former, only without an explanation or attempt to reconcile the two.

And so it is throughout the brief. Our brief, we submit, stands unanswered on every material point.

COOK, P. J. delivered the opinion of the court.

This suit was instituted by appellee, administrator of the estate of Jas. A. Elmore, deceased, to recover on a policy of insurance issued by appellant upon the life of the deceased. There was a verdict for the plaintiff, and from the judgment rendered thereon the defendant prosecuted this appeal.

The application for the policy was made on April 10, 1912; and on the next day appellant's medical examiner examined the applicant. About a month later the policy was delivered to and accepted by the applicant. Shortly after the delivery of the policy it was discovered that the assured was afflicted with tuberculosis, and it is probable that he was so afflicted at the time he made the application for the insurance, and when the policy was delivered to him. When this discovery was made the insurance company requested a surrender of the policy, which was refused. The insured died June 23, 1913, and upon the refusal of payment of the policy, this suit was brought.

It was agreed that the insured was suffering with tuberculosis at the time his application was made and when the policy was delivered, and, subsequently, his death

was caused by the disease named. It is, however, insisted that the insured did not know of his condition when he made the application—that his statements as to his health were made in perfect good faith—and that he believed his statements were absolutely true. The insurance company contends his representations, in the form they were made, were in effect warranties, and that if his statements were not true, the policy never had any legal effect and was void It is insisted, further, that the applicant's being in good health at the time the policy was delivered was a condition precedent to the validity of the policy.

The plaintiff relied on this clause in the policy itself as a complete answer to the defenses set up by the defendant, viz.:

"All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid or be used in defense to a claim under this policy, unless it is contained in a written application, and a copy of such application shall be indorsed upon or attached to the policy when issued."

First, as to the contention that the policy never had any validity, because it was admitted that the insured was not in good health at the time the policy was delivered, we think the statement in the application to this effect merely means that the defendant's health had not undergone any change between the date of the application for and the delivery of the policy. In other words, if at the time the policy was delivered the insured's health had changed, and the insured was aware of the fact, it would have been his bounden duty to have disclosed the fact; but if neither the insured nor the company knew of this changed condition of insured's health when the policy was delivered, the "continued good health" clause in the application is saved by the terms of the policy itself, and the company will not be permitted to

contest the payment of the policy, unless it can show that the insured fraudulently concealed the fact that he was not in good health when he received the policy.

The phrase "continued good health" can mean only that the insured having stated that he was in good health when he applied for the insurance, the company would not be bound to deliver the policy, if this state of good health had changed to a state of bad health, even though the application had been approved, the policy signed by the officers of the company and delivered to its agents for delivery to the insured. "Continued good health" is a relative term and manifestly relates to the insured's statement of his condition when he signed the application. This is the letter of the document prepared by the insurance company, and its own carefully prepared documents will be construed most strongly against it. The phrase in question refers alone to the reserved right of the company to withhold *delivery* of the policy, and has no reference to the validity of the policy *after* its delivery to the insured. The only difference in the essential facts of this case and the facts of *Life Ins. Co.* v. *Swords,* 68 So. 920, is that in the present case the applicant said he was aware that his answers were "material to the risk."

Learned counsel for appellant finds much more potency in "material to the risk" than we have been able to discover. In fact, we think this phrase has very little practical value. Any person of ordinary intelligence knows that his answers to questions propounded to him as a basis for life insurance are material, else they would not be asked. The applicant must have known that his answers were of material consequence, and he is bound to answer truthfully whether he is made to say that he knew his answers were "material to the risk" or not.

This case is ruled by the *Swords Case,* 68 So. 920, and will be affirmed.

*Affirmed.*