## New York Life Ins. Co. v. Smith.

[91 South. 456, No. 22182.]

1. Insurance. *Statute intended to make knowledge acquired by medical examiner for life insurance company chargeable to insurer is declaratory of the common law.*

   If section 2615, Code 1906 (section 5078, Hemingway's Code), intended to make the knowledge acquired by the medical examiner for a life insurance company of the physical condition of the insured while making such examination imputable to the insurance company, such statute is merely declaratory of the common law, because under the common law a medical examiner for a life insurance company is the agent of the insurer in making examination of the applicant for life insurance, and taking down and recording his answers as to his condition of health, and the knowledge thus acquired by such medical examiner is the knowledge of the insurer, who is estopped from taking any advantage thereof; and it is wholly immaterial whether such medical examiner communiceteed the knowledge so acquired of the assured's condition of health to the insurer.

2. Insurance. *Insurer's placing policy in control of insured is sufficient for delivery.*

   In order to constitute delivery of a life insurance policy, it is not necessary that the actual manual possession of the policy be with the insured at the time of his death; it is the intention of the parties that governs, and not the manual possession of the policy; and where there is an intention on the part of the insurer to part with the control of the policy and place it in the control of the insured, or some other person acting for him, that is sufficient to constitute delivery.

3. Insurance. *Provision that policy must be delivered to applicant "while in good health," means same condition of health as at date of application.*

   Where an application for a life insurance policy, which by its terms became a part of the contract of insurance, provides, among other things, that the policy applied for shall not take effect until delivered to and received by the insured during his lifetime, "while in good health," and the evidence shows that the insured, although not in good health, was in the same condition of health at the time of the delivery of the policy as he was at the time of his application therefor, the said provision in the application was not violated, be-

cause it only meant that the defendant's health had not undergone any change between the date of the application for and the delivery of the policy.

4. Insurance. *Where first premium was paid and policy delivered to agent while insured was in same health as when applying, and insured told agent to hold policy for him, and later died, there was a delivery.*
Where an application for a life insurance policy provides that the policy applied for shall not take effect until the payment of the first premium and delivery of the policy to the insured in his lifetime while in good health, and the evidence shows that the first premium was paid and the policy forwarded by the insurer to its agent for delivery, and the latter informed the insured that he had the policy for delivery, and the insured told such agent to hold it for him, that he would call for it later, and before its manual delivery to the insured the latter died, *held,* if at the time of receiving such notice from the insurer the insured was in the same state of health that he was when he made application for said policy, then such delivery to the agent of the insured constituted delivery to the insured; and the trial court did not err in refusing an instruction which sought to inform the jury that the insurer's agent could not, without the latter's consent, act as the agent of both the insurer and the insured in making delivery of the policy, such instruction being inapplicable to the case.

Appeal from circuit court of Perry county.

Hon. R. S. Hall, Judge.

Action by Susie B. Smith, as admininstratrix of the estate of her deceased husband, J. B. Smith, against the New York Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*A. H. Longino,* for appellant.

*Stevens & Heidelberg,* for appellee.

Anderson, J., delivered the opinion of the court.

Appellee, Mrs. Susie B. Smith, as administratrix of the estate of her deceased husband, J. B. Smith, sued the appellant, the New York Life Insurance Company, in the circuit court of Perry county, on a life insurance policy issued by the appellant to said decedent during his lifetime,

payable to his estate, and recovered judgment for the face amount of said policy, with interest and costs, from which judgment appellant prosecutes this appeal.

Appellant defended the suit on the ground that the policy in question had not taken effect at the death of the insured, because, as provided in the contract of insurance, he had not paid the first premium thereon, and it had not been delivered to and received by him while living and in good health, and on the further ground that said contract was void because it was procured by false and fraudulent representations made by the insured to the appellant in his application therefor, in this, that he represented in his said application that he was at the time of the making thereof in good health, and was not suffering from any ailment of the kidneys, bladder, or other internal organs, when in truth and in fact he was at that time, and knew the fact himself, suffering with internal cancer or other serious disease of the internal organs, and that, on the faith of which representations so falsely and fraudulently made, appellant issued the policy in question. The policy was applied for on the 14th of April, 1917, and was issued on the 20th of April, 1917, and the insured died on the 22d of June of the same year. Insured's application contains a stipulation that all his answers therein are material to the risk; but the policy issued thereon expressly provides in the following language that all statements made by the insured in his application, in the absence of fraud, shall be treated as representations, and not warranties:

"The policy and the application therefor, copy of which is attached hereto, constitute the entire contract. All statements made by the insured shall, in absence of fraud, be deemed representations and not warranties, and no such statement shall avoid the policy or be used in defense to a claim under it, unless it be contained in the written application and a copy of the application is indorsed upon or attached to this policy when issued."

We will consider first the assignments of error which depend on the question of law, whether the knowledge acquired by a medical examiner for a life insurance company in the examination of an insured for the purpose of ascertaining his condition of health is imputable to the insurance company. The question arose in the present case in this manner. Appellant gave notice under the general issue that it would prove by way of defense that the policy in question was procured through the fraud of the insured, as stated above. At the term of the court at which the cause was tried, and just before entering upon the trial, appellee filed a replication to this notice, in which she averred that, if it were true, as set up in said notice, that the insured was suffering from some serious internal disease at the time of making his application, Dr. Mounger, appellant's medical examiner, who examined the insured and wrote down his answers to the questions propounded to him touching his condition of health, knew of such disease, and that such knowledge was imputable to the appellant. Thereupon appellant moved the court to strike from the files such averment contained in appellant's said replication, which motion was by the court overruled. Appellant then moved the court for a continuance of the cause on the ground of surprise, on account of the matter so set up in the replication, in order that appellant might prepare its defense thereto, which motion for a continuance the court overruled. On the trial appellant's medical examiner, Dr. Mounger, who examined the insured and wrote down his answers as to the condition of his health, testified on behalf of appellee that, notwithstanding his report of said medical examination which he turned over to appellant's soliciting agent, D. B. Holmes, through whom said application for insurance was made, showed that he found said insured free from any disease of the internal organs; that in truth and fact he found on such examination that there was a slight trace of albumen in the urine of the said insured, and some inflammation of his liver (which condition he said did not necessarily mean

ill health), of which he made a private report to appellant's medical director in writing, which was customary under the circumstances; that he had been a medical examiner for appellant for about ten years, and such a practice was not unusual. Appellant objected to this testimony on the ground of surprise—that it was not prepared to meet such evidence with counter proof—and for the further reason that, if such a report had been made to the appellant by Dr. Mounger, the best evidence of it was the report itself. These objections the court overruled.

It is contended for the appellant that under section 2615, Code of 1906 (section 5078, Hemingway's Code), knowledge acquired by a medical examiner for a life insurance company of the physical condition of the insured while making such examination is imputable to the insurance company. That statute is a part of chapter 69, Code of 1906 (chapter 125, Hemingway's Code), which deals with both life and fire insurance, as well as other kinds of insurance. Said section does not refer in express terms to medical examiners for life insurance companies, and it is so involved in its terms that there is some difficulty in determining whether its provisions were intended to apply to such medical examiners. It is unnecessary to decide the question, because if it does so apply it is only declaratory of the common law. A medical examiner for a life insurance company is the agent of the insurer in making examination of an applicant for life insurance and in taking down and recording his answers, and his knowledge thus acquired is the knowledge of, and is imputable to, the insurer, who is estopped from taking any advantage thereof. *Franklin Life Insurance Co. v. Galligan,* 71 Ark. 295, 73 S. W. 102, 100 Am. St. Rep. 73, and note, in which the authorities are collected; 14 R. C. L. 1161. It follows, therefore, that it is wholly immaterial whether or not appellant's medical examiner, Dr. Mounger, communicated the knowledge so acquired of the insured's condition of health to appellant, although, if done, it may be true that appellant would not have issued the policy in question.

Appellant is chargeable with any dereliction of its medical examiner in that respect, and not the insured, for the latter was without fault; and therefore it was not error in the trial court in refusing to rule out the evidence of said medical examiner in question. And it also follows, for the same reason, that the court committed no error in refusing to strike out appellee's said averment in her reply to appellant's said notice under the general issue, and in refusing appellant's application to continue the cause on the ground of surprise. And furthermore, if it were true that under the law appellant had the right to show in evidence by its medical director that he had received no such communication from Dr. Mounger, still the action of the court complained of would be harmless, because appellant introduced in evidence, without objection on the part of appellee, a letter from said medical director in which he stated that he had received no such information from Dr. Mounger. But we hold that it is entirely immaterial whether Dr. Mounger communicated his knowledge of insured's condition of health to appellant, for his knowledge was appellant's.

The appellant assigns as grounds for reversal the refusal by the trial court of three instructions requested on its behalf, addressed to the question of the delivery of the policy involved in this cause. Insured's application provided, among other things, that the policy applied for should not take effect until the first premium was paid and the policy delivered to and received by the insured during his lifetime while in good health.

Stating the evidence on the question of delivery most strongly for appellant, it showed, in substance, that appellant had two soliciting agents at Hattiesburg. D. B. Holmes and N. R. McCullough. They were not partners, and had no connection with each as such agents, except that in some instances they would divide commissions; and in most cases all policies issued by the appellant on applications forwarded by either of said agents were sent to McCullough for delivery. The insured made application

for the policy in question through said Holmes, who took him to Dr. Mounger, appellant's said medical examiner at Hattiesburg, and had him examined, and forwarded his application to appellant. The application was dated the 14th of March, 1917, and the policy was issued on the 20th of April thereafter, and forwarded to said McCullough, one of the agents of the appellant, for delivery. Soon after its receipt McCullough informed Holmes that he had received the policy from appellant, and that he had met the insured, Smith, on the street in Hattiesburg shortly before this conversation, and suggested to Holmes that he see Smith and deliver the policy. Accordingly Holmes afterwards did see the insured, and told him the policy was there ready for delivery, and the insured for some reason told him to hold the policy for him, and he would get it later, which Holmes agreed to do. The first premium on the policy was paid before insured's death. On the 22d of June, 1917, the insured died without the policy ever having been in his manual possession. It was still in the office of McCullough. The insured was taken violently ill, and lived only a few days. Upon hearing of his death McCullough returned the policy to the Jackson office of the appellant, from which office it had been forwarded to him.

By the first refused instruction for appellant it was sought to inform the jury that, if the policy in question had not been actually delivered into the manual possession of the insured during his lifetime, while in good health, either by the appellant or its agent, the jury should find for the appellant. By the second refused instruction it was sought to inform the jury that, if substantially the facts above stated with reference to the delivery of the policy were true, then there was no delivery and they should find a verdict for appellant. And by the third refused instruction it was sought to inform the jury that said Holmes could not act as agent of appellant for the delivery of the policy, and at the same time act as agent for the insured, unless such dual capacity had been consented to by the appellant.

It is settled by many authorities that, in order to con-
stitute delivery of a life insurance policy, it is not nec-
essary that the actual manual possession of the policy be
with the insured.   It is the intention of the parties that
governs, and not the manual possession of the policy.
Where there is an intention on the part of the insurer to
part with the control of the policy, and to place it in
the control of the insured or some person acting for him,
that is sufficient to constitute delivery.   And the delivery
of the policy by the insurer to its agent, with unconditional
instructions to deliver to the insured, amounts to delivery.
14 R. C. L. 898, 899.   It was held in *Alabama Life Ins.
Co. v. Herron,* 56 Miss. 643, that, where there was no con-
dition in the contract to the contrary, the mere accept-
ance of an application for insurance by the insurer amounts
to a completion of the contract when the applicant therefor
is notified of that fact; and the same principle was reaf-
firmed in *Mutual Life Ins. Co. v. Shoemake,* 126 Miss.
497, 89 So. 154.

The contract of insurance involved in *Fidelity Mutual
Life Ins. Co. v. Elmore,* 111 Miss. 137, 71 So. 305, pro-
vided, as the contract does in the present case, that the
policy should not take effect until the payment of the first
premium, and delivery to the insured in his lifetime while
in good health.   In passing on the meaning of the term
"good health" as used in the application in that case the
court said:

"First, as to the contention that the policy never had any
validity, because it was admitted that the insured was not
in good health at the time the policy was delivered, we
think the statement in the application to this effect mere-
ly means that the defendant's health had not undergone
any change between the date of the application for and the
delivery of the policy.   In other words, if at the time the
policy was delivered the insured's health had changed, and
the insured was aware of the fact, it would have been his
bounden duty to have disclosed the fact; but if neither the
insured nor the company knew of this changed condition

of insured's health when the policy was delivered, the 'continued good health' clause in the application is saved by the terms of the policy itself, and the company will not be permitted to contest the payment of the policy, unless it can show that the insured fraudulently concealed the fact that he was not in good health when he received the policy.

"The phrase 'continued good health' can mean only that the insured having stated that he was in good health when he applied for the insurance, the company would not be bound to deliver the policy, if the state of good health had changed to a state of bad health, even though the application had been approved, the policy signed by the officers of the company and delivered to its agents for delivery to the insured. 'Continued good health' is a relative term and manifestly relates to the insured's statement of his condition when he signed the application. This is the letter of the document prepared by the insurance company, and its own carefully prepared documents will be construed most strongly against it. The phrase in question refers alone to the reserved right of the company to withhold delivery of the policy, and has no reference to the validity of the policy after its delivery to the insured. The only difference in the essential facts of this case and the facts of *Life Ins. Co.* v. *Swords*, 68 So. 920, is that in the present case the applicant said he was aware that his answers were 'material to the risk.' "

The principle of law declared in that case was embodied in appellee's first instruction given by the court, wherein the jury were instructed that, if they believed from the evidence there was no change in the condition of the insured's health between the time of his application and the delivery of the policy, then such delivery did not violate said "good health" stipulation in his application. We conclude therefore that, under the principles of law above stated, and in view of the giving of said first instruction for the appellee, the court commited no error in refusing said first and second instructions asked by the appellant.

Nor was there any error in refusing the third instruction asked by the appellant, which sought to inform the jury that appellant's soliciting agent could not act as agent of both parties in the delivery of the policy without the consent of appellant. The evidence showed without conflict that, when appellant's soliciting agent notified the insured that he had the policy for delivery, and the latter requested such agent to hold it for him until he called for it, which the agent agreed to do, the first premium had been paid by the insured. Therefore the only condition left upon which delivery depended, according to the contract, was whether the insured at that time was in the same state of health he was when he made his application; and this issue of fact was properly submitted to the jury, and found in favor of appellee. Under such facts, and the authorities above referred to in this opinion, delivery to the agent of appellant was delivery to the insured. Neither the policy nor application required the insured to sign any statement or certificate as to his condition of health, his occupation, or other matter as a condition upon which the policy should be delivered to him. It will be seen at a glance that this is a very different question from that involved in *Mutual Life Ins. Co.* v. *Shoemake, supra.* It follows from these views that said third refused instruction had no application to the facts of the case, and it was not error to refuse it.

There was ample testimony to go to the jury on the question whether the policy involved was procured by fraud. The evidence for appellant tended strongly to establish the fact that, when insured made application for the policy, as well as when it was received for delivery, he was suffering from internal cancer, and must therefore have known that, while the evidence for appellee tended quite as strongly to show that the insured was in perfect health at and beyond those dates, and up to a few days before his death. Clearly that was an issue for the jury.

*Affirmed.*