NATIONAL LIFE & ACCIDENT INS. CO. *v.* GREEN.

(In Banc. June 14, 1941. Suggestion of Error Overruled Sept. 22, 1941.)

[2 So. (2d) 838. No. 34629.]

Joseph **E. Brown**, of Natchez, for appellant.

584

Luther A. Whittington, of Natchez, for appellee.

586

Joseph E. Brown, of Natchez, for appellant, in reply.

Argued orally by **Joseph E. Brown**, for appellant, and by **L. A. Whittington**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

Suit was brought and judgment obtained by appellee as plaintiff upon a life insurance policy issued upon the life of her brother, Albert Green. The policy contains the following provisions: "(3) . . . Except as herein provided, if the insured is not alive or is not in sound health on the date hereof . . . the Company's full liability shall be discharged by the payment of the sum of the premiums received hereunder. (4) This policy contains the entire agreement between the Company and all parties in interest . . ."

To the declaration the defendant pleaded the general issue and made tender of the premiums paid with interest thereon. It filed also notice of special affirmative matter to the effect that insured was not in sound health at the time the policy was delivered but was suffering from tuberculosis, wherefore no obligation was assumed under the policy except as to return of premiums paid. Counter notice was filed by plaintiff denying that insured was of unsound health when the policy was issued and further "that the defendant is now estopped to make such defense because it delivered the policy of insurance to the deceased, and whatever right it had by reason of the

condition of the health of the deceased was waived by the delivery of the policy.''

Brief for appellant discloses that the counter notice was based upon Code 1930, Section 5174, which is as follows: ''All life insurance companies doing business in the state of Mississippi shall deliver to the insured with the policy, certificate or contract of insurance in any form a copy of the insured's application, and in default thereof said life insurance company shall not be permitted in any court of this state to deny that any of the statements in said application are true.''

Insured's application for the insurance was introduced in evidence and it shows that the applicant represented that he was in sound health and that he had never had tuberculosis. Upon the issue as to the truth of these allegations there was considerable testimony. On behalf of the plaintiff the trial court instructed the jury that if the insured was not at the time the policy was issued, and for many months prior thereto, suffering from tuberculosis they should find for the plaintiff. However, the following instruction No. 3 was also given for plaintiff: ''The Court instructs the jury for the plaintiff that if they believe from a preponderance of the evidence in this case that no medical examination was required in the writing of the policy of insurance in question on the life of Albert Green, and that the insurance was written by the defendant upon the recommendation of their agent, C. W. Campbell; and if they further believe from the evidence that the agent for the defendant, C. W. Campbell, had opportunity to observe the physical condition and the health condition of the insured, and further took his application for the insurance, and in good faith, after observing the insured, Albert Green, and after receiving answer to the questions propounded to the said Albert Green, believed the said Albert Green was a fit subject for insurance and recommended that the defendant issue a policy to him, and if the jury further believe that at the time the said policy was issued and

delivered by the agent for the defendant to the said Albert Green, that the said agent of the defendant had opportunity to observe the physical condition and health of the said Albert Green, and in good faith believing him to be in good and sound health, delivered said policy to him; and if they further believe that the said Albert Green did not knowingly make any false representations to the said agent in procuring said insurance, and that he was acting in good faith in procuring said insurance, then and in such event it is the duty of the jury to find for the plaintiff, and your verdict should be 'We, the jury, find for the plaintiff.' '' It is true that the defendant in order to meet the theory of this instruction was allowed a charge involving the bad faith of the applicant, yet a party may not be estopped to assert a correct theory because he has been compelled to take defensive measures in kind against one which is erroneous.

The following instruction No. 2 requested by the defendant was refused: ''The Court instructs the jury for the defendant that if you believe by a preponderance of the evidence in this case that Albert Green, at the time of the issuance of the policy, was not in sound health and was suffering from a disease tending materially to shorten his life, then it is your sworn duty to return a verdict for the defendant.''

In view of Code 1930, Section 5174, above quoted, the defendant was estopped to deny that any of the statements in the application were true. However, it did not ground its defense upon the falsity of the representation in the application but upon the express provision in the policy itself set out above. That it was entitled so to do is clearly shown in Metropolitan Life Ins. Co. v. Scott, 160 Miss. 537, 134 So. 159, 161, where it was held that ''One evident purpose of the statute requiring the delivery to the insured of a copy of the application is to exclude or eliminate from the contract an application, a copy of which is not delivered to the insured with the policy, and to render ineffective any defenses or at-

tempted defenses based upon anything contained in such application, but it does not follow that a failure to incorporate in or attach to the policy a copy of the application will preclude the company from relying on any defenses available to it under the terms of the policy. In the policy here involved there is no language or provision indicating a purpose or attempt on the part of the appellant company to make anything found in the application a part of the contract. The policy was complete in itself, and purports to contain in plain language all the terms, conditions, and stipulations of the contract, and we do not think the company is precluded from relying on the express conditions and stipulations appearing on the face of the policy, by reason of the fact that the application contained representations or stipulations in reference to the same subject-matter. When the company chose to ignore the statements and representations appearing in the application, and incorporated in the policy in plain terms the conditions and stipulations upon which its validity should rest, and the policy was accepted by the insured as constituting a contract, it had the right to make any defenses it might have under the terms of the policy, without reference to such application.''

This brings us to a consideration of the effect of the policy proviso that if the insured is not in sound health on the date of the policy the full liability of the company will be discharged by payment of the sum of premiums received. It is not helpful to discuss whether this provision is in the nature of a warranty, Cooley's Briefs on Insurance, vol. 4, p. 3007, or a condition precedent, Couch, Cyclopedia of Ins. Law, vol. 4, p. 2833. In any event, it is a provision which effectively limits recovery under the policy and is part of the contract between the parties. Such is its language and import and we are impotent to impair its literal effect by invoking rules of construction available only to resolve ambiguity. Even though it be placed in the contract for the benefit of the insurer, it is binding upon the insured. The issue is not

fraud of the applicant, but breach of the condition. Such a limitation upon the liability of the defendant is a proper subject of contract, and is binding upon the insured. Mutual Life Ins. Co. v. Vaughan, 125 Miss. 369, 88 So. 11; National Life & Acc. Ins. Co. v. Hugger, 158 Miss. 686, 131 So. 75. In the former case, the Court said [125 Miss. 369, 88 So. 13]: "The provision in the policy is that the proposed policy should not take effect unless the policy should have been delivered to, and received by, the insured during the continuance of good health. The question is then to be determined whether the applicant was in good health at that time." See, also, Co-operative Life Ass'n v. Leflore, 53 Miss. 1, 16; New York Life Ins. Co. v. Gresham, 170 Miss. 211, 154 So. 547; 37 C. J. pp. 400, 404; Couch, op. cit. supra.

The issue which should have been submitted to the jury by the instructions is not the good faith of the applicant or of the agent but whether there existed that condition—sound health—upon which the obligation of the defendant rested. 37 C. J., p. 400. It was error to give the third instruction for the plaintiff and to refuse the second instruction for the defendant.

Reversed and remanded.

### On Suggestion of Error.

**Roberds, J.,** delivered the opinion of the court on suggestion of error.

Counsel for the appellee urged on the appeal, and again urges on the suggestion of error, that the policy provision, ". . . if the insured is not in sound health on the date hereof . . . full liability shall be discharged by the payment of the sum of the premiums hereunder," means "a change in the condition of the health (for the worse) from the date of the acceptance of the application to the date of the actual delivery of the policy"; and he cites in support of that contention Fidelity Mutual Life Ins. Co. v. Elmore, 111 Miss. 137, 71 So. 305, and New York Life Insurance Co. v. Smith, 129 Miss.

544, 91 So. 456. That was the construction placed upon the provisions involved in those cases. Counsel might also have cited New York Life Insurance Co. v. Rosso, 154 Miss. 196, 122 So. 382, to the same effect. But those cases are quite different from the case at bar. In all three of those cases there was an examination of the applicant by a doctor and the policies were issued after and upon the result of such examination. In the case at bar there was no examination. The policy was issued upon the statements of the applicant. This is a fundamental and vital distinction. The examining doctor is the agent of the insurer. The knowledge gained by him is imputed to the insurer. New York Life Insurance Co. v. Smith, supra. Therefore, in such case, the insurer determines through its own agent the insurability of the applicant. It thereby establishes that status, and, on the condition so established through its own agent, appointed for the purpose, it accepts the risk. Under such circumstances it is but fair, reasonable, and logical to say the parties mean the insurance shall be issued and become effective unless the applicant is in worse health upon delivery of the policy than when the examination is made. 37 C. J., sec. 78, pp. 404, 405; Chinery v. Metropolitan Life Insurance Co., 112 Misc. 107, 182 N. Y. S. 555.

Also the particular wording of each provision may produce a different meaning. In the Elmore case, for illustration, the phrase was "continued good health." The word "continued" naturally carried a meaning of comparative health as between the time of the examination and date of delivery of the policy.

Again, in these three cases there were provisions in the applications, or policies, or both, that statements made by the applicants were representations and not warranties in the absence of fraud, which left open for proof the question of good faith and fraud.

In the case at bar the application is not considered. No copy of it was attached to the policy or delivered to the insured. It is not a question of contradicting the state-

ments in the application. The provision is in the policy itself. It is not a question of fraud. Good health, as defined by the cases, is a question of fact; it is a condition precedent to liability, except for return of the premiums.

The case of National Life & Accident Ins. Co. v. Hugger, 158 Miss. 686, 131 So. 75, cited in the original opinion, is exactly in point—like provisions, apparently identical appellants; no medical examinations. To sustain the suggestion of error we would have to overrule that case.

In Murphy v. Metropolitan Life Insurance Co., 106 Minn. 112, 118 N. W. 355, 356, a case very similar to the one at bar the Court used this language:

"It is clear from the language of the policy that the defendant's promise of insurance was not absolute, but conditional, and that the existence of life and sound health in the insured on the date of the policy is the condition upon which the promise is made. It is the fact of the sound health of the insured which determines the liability of the defendant, not his apparent health, or his or any one's opinion or belief that he was in sound health." For collection and discussion of cases see 17 L. R. A. (N. S.) 1144-1151, and 43 L. R. A. (N. S.) 725.

It is but natural that the risk is greater without than with, an examination. The State of Mississippi recognizes that. The State has an interest in the solvency of insurance companies doing business in Mississippi. Therefore, we find the law of this State prohibiting insurance companies from issuing policies, without examination, to a greater amount than five thousand dollars "on any one life in any year." Chap. 205, Laws Miss. 1940, p. 376. Before the enactment of that statute the limit was twenty-five hundred dollars. Section 5158, Code of 1930.

No question of actual knowledge, if any, of insurer when the application was taken of unsound health of applicant is presented on this appeal.

Suggestion of error overruled.

**McGehee, J.,** delivered a dissenting opinion.

In the absence of proof that an applicant for life insurance has knowingly made false statements in the application as to the condition of his health, the same rule should be applied as to the liability of the insurer in cases where a medical examination is waived as where the applicant has been examined by a physician. In each instance the insurance company determines the method by which it will ascertain the facts as to insurability. In one case it has the physician, as its own agent, to ascertain the applicant's state of health by asking him questions, recording the answers and a physical examination of his person. In the other, it has its insurance agent ask the questions, record the answers in the application, observe the physical condition of the applicant as reflected by a personal observation of his appearance as to good health, and make a recommendation as to the acceptance of the risk. A medical examination having been waived by the insurance company in the case at bar, it should not now be permitted to avoid the payment of the death claim because of its failure to obtain the knowledge or information that such an examination would have disclosed, unless it can show that the applicant intentionally concealed the true facts as to the state of his health at the time the application for the policy was taken, by knowingly making false statements in regard thereto.

It is true that the policy itself contains a provision to the effect that it will not be enforceable "if the insured is not alive or is not in sound health on the date hereof," meaning the date of delivery. However, a provision in this and other language of the same import has been repeatedly held by this Court not to relate to anything other than a change in the condition of health between the date of the application and the date of the policy. Fidelity Mutual Life Ins. Co. v. Elmore, 111 Miss. 137, 71 So. 305; New York Life Ins. Co. v. Smith, 129 Miss. 544, 91 So. 456; and New York Life Ins. Co. v. Rosso, 154 Miss.

196, 122 So. 382, cited in one of the controlling opinions herein. Moreover, this language of the provision itself shows on its face that it has reference to some change that might intervene from the date of the application and the delivery of the policy. The words, "if the insured is not alive . . . on the date hereof," obviously had reference to some change in his condition that might occur between the date of the application and the delivery of the policy, since the agent certainly knew that he was not dead when he made the application, and it is likewise clear that the remainder of the provision, "or is not in sound health," was intended to protect the insurance company against any changed condition in the health of the applicant between the time he had been recommended by the agent as a good risk and the date of the issuance and delivery of the policy. At any rate, this Court so construed the meaning of such a clause in the cases hereinbefore cited. In the Elmore case, supra, the Court said that the requirement that the insured be in sound health at the time the policy should take effect "means that the [assured's] health had not undergone any change between the date of the application for and the delivery of the policy." Likewise, in the Smith case, supra, the Court construed a provision that the policy should not take effect until the payment of the first premium, and delivery to the insured in his lifetime, and while in good health, related solely to a change in the condition of his health from the date of the application to the date of the policy, a provision identical in substance with the one contained in the policy before us. But the majority opinion herein seeks to distinguish those cases from the instant case, because there was an examination of the applicant in each of those cases by a doctor, and the policies were issued as a result of such an examination; and that the doctor was the agent of the insurance company. I am unable to thus distinguish those cases from the case at bar. While in those cases the insurance company selected the doctor as its agent, to secure the information

as to the condition of the health of the applicant by asking him questions, recording the answers, and observing his physical condition, it likewise selected its insurance agent to ask the questions in regard to whether the applicant was then suffering from the tuberculosis that later caused his death, and whether he was suffering from other diseases mentioned in the application; and permitted its said agent to make a recommendation as to the insurability of the applicant, based on his personal observation of his physical condition and good health. Moreover, the cases referred to were determined by the meaning of the language employed in the policy, requiring that the applicant should be in good health at the time of the delivery of the same, and those decisions do not purport to be based upon the fact that in those cases there had been a medical examination. In other words, the Court was construing the meaning of the provision in the policy, and 'I am unable to see how such meaning could be affected by the fact that in one instance the insurance company procured its information as to the health of the applicant through a physician as its agent, and in another instance procures such information through its soliciting agent, to avoid the expense of a medical examination. The courts have not assigned the fact that a medical examination was made as the basis for construing such a provision in the policy to relate solely to a change in the state of the applicant's health between the date of the application and the delivery of the policy.

This case seems to have been tried in the court below by the plaintiff on the theory that there was a common law estoppel against the insurance company making the defense of non-liability on the ground that the applicant had tuberculosis when the insurance was applied for, and where no false representation was knowingly made by the applicant to negative such fact. The case was submitted to the jury on that issue, and in my opinion under proper instruction, resulting in a verdict for the plaintiff.

Some emphasis is also laid upon the fact that a copy of the insured's application was not delivered to him with the policy, as required by section 5174, Code of 1930, which provides that in case of such default the insurance company, "shall not be permitted in any court of this state to deny that any of the statements in said application are true." That statute, in full, reads as follows: "All life insurance companies doing business in the state of Mississippi shall deliver to the insured with the policy, certificate or contract of insurance in any form a copy of the insured's application, and in default thereof said life insurance company shall not be permitted in any court of this state to deny that any of the statements in said application are true."

No copy of the application in the present case was delivered to the insured with the policy, nor is the application referred to in the policy as being a part of the contract of insurance. It will be noted, however, from the language of the statute, that the application of its provisions are not made to depend upon whether the application is referred to in the policy as being a part thereof, nor is the application of the statute made to depend upon whether the applicant has been examined by a physician, or whether such examination has been waived. It is true that in the case of Metropolitan Life Ins. Co. v. Scott, 160 Miss. 537, 134 So. 159, the Court held that the statute was inapplicable to any provision where there is no language or provision in the policy indicating the purpose or intent on the part of the insurance company to make anything found in the application a part of the contract. Thus it will be seen that the decision in that case seeks to engraft an exception upon the statute as written, and permits the insurance company to deny that any statements in the application are true when the policy itself contains the requirement that the insured be in good health at the time of the delivery of the policy.

In other words, it was held that the insurance company, by inserting such a provision in its policy, may introduce evidence to deny the truth of statements contained in the application, if at the same time such evidence disproves the good health of the insured at the time of the delivery of the policy. The case, however, did not hold that the requirement that the insured shall be in good health on the date of the delivery of the policy relates to anything other than a changed condition in the insured's health at the time of the application to the date of such delivery. The case did not overrule the former decisions hereinabove referred to, nor is it controlling to require us to depart from the rule announced in those cases as to the meaning of such a provision in the contract.

But aside from the effect to be given to this statute, I am of the opinion that the evidence sustains the plea of estoppel at common law, and that the judgment of the court below should have been affirmed.

It is a matter of common knowledge that there is a great amount of life insurance now in force in this state where medical examinations were waived, both by old line life insurance companies, and under health and accident benefit insurance contracts, especially on the lives of young people, where the holders believe in good faith that they are protected, unless it can be shown by the insurer that false statements were knowingly made as to the health of the applicant when the applications were taken, and in my opinion an insurance company should not be permitted to defeat death claims in such cases by showing that death was caused by some illness which ante-dated the application, but which was unknown to the applicant at the time, by merely offering to refund the premiums paid. No one would be willing to sacrifice and pay premiums from year to year under such circumstances. If the insurance companies, in order to avoid the expense incident to a medical examination, should choose to accept the risk on the recommendation of their

soliciting agents, they should be bound by such acceptance, in the absence of proof that the applicant has knowingly made those representations in order to obtain the insurance.

In the case of National Life & Accident Ins. Co. v. Hugger, 158 Miss. 686, 131 So. 75, cited in the majority opinion on this suggestion of error, the evidence of the plaintiff showed that at the time the insured made the application he knew he was not in good health. If so, he knowingly made false statements therein to the contrary, and therefore no recovery could be allowed on the policy. The court below recognized this to be the law, and instructed the jury accordingly, as shown by instruction No. 3, set forth in the main opinion herein.

Referring again to the effect that should be given to section 5174, Code of 1930, hereinbefore quoted, attention should be called to the fact that in the Scott case, supra, this Court predicated its decision upon the holding of the Iowa Court in the case of Kirkpatrick v. London Guarantee & Accident Co., Ltd., 139 Iowa 370, 115 N. W. 1107, 1108, 19 L. R. A. (N. S.) 102, saying that the Iowa statute under consideration, section 1741, is practically the same as ours, when in fact the statute of that state limited its own application to policies by the terms of which the application is "made a part thereof . . . or referred to therein, or which may in any manner affect the validity of such policy," whereas our statute is not so limited by its terms or by necessary implication. Nor is it contended by the appellant in the case at bar that the application "affects the validity of the policy," but non-liability is sought to be predicated solely upon the fact that the insured was not in good health at the time of its delivery when the policy itself required that he should be. Moreover, this Court expressly held in the cases of Sovereign Camp of W. O. W. v. Farmer, 116 Miss. 626, 77 So. 655, and New York Life Ins. Co. v. Rosso, 154 Miss. 196, 122 So. 382, 386, that our statute now under consideration is substantive law, and that its pro-

visions ''became a part of the contract here entered into to the same extent as if appellant had expressly agreed in its certificate [the policy] not 'to deny that any of the statements in said applications are true.' '' By the same token the appellant in the case at bar failing to comply with this requirement of the substantive law, should not be permitted to introduce proof to deny the truth of the statements contained in this application, which was then in evidence as a part of the plaintiff's case, on the ground that such proof would likewise show that a provision in the policy itself also required that the insured should be in good health. If the insurance company had, by the force of this statute, agreed not to deny the statements contained in the application, as the Court held in the cases above cited, then it cannot offer proof the effect of which would be to deny such statements by the expedient of invoking a provision in the policy itself, which the Court has thrice held to relate only to a change in the state of the applicant's health between the date of the application and the delivery of the policy, and especially when no such change is claimed to have occurred.

But aside from this statute, I am of the opinion, as hereinbefore stated, that the jury was justified in finding that the insurance company is estopped in this case under the rule of estoppel at common law, as embodied in the instructions granted in favor of the plaintiff.