Zimmerman, J.
The agent who solicited the insurance policy in issue was a long-time employee of the insurer. His duties were to sell insurance within the territory assigned to him, collect premiums and service debits and accounts. He described himself as “an insurance representative.”
At the trial, plaintiff, a filling station attendant, gave substantially the following account concerning the solicitation and delivery of the policy:
On August 8, 1955, the insurer’s agent came to plaintiff’s place of work and solicited first his employer and then him to purchase insurance. Plaintiff told the agent that he had enough insurance, whereupon the agent said, “I have a special insurance policy and let me sell you an insurance policy for your wife.” In reply plaintiff stated, “My wife has a rheumatic heart condition, you can’t sell me a policy for her.” The agent was also informed that the wife was under a doctor’s care. Nevertheless, he persisted and finally handed plaintiff a blank applica *98 tion form and told him to have his wife sign it at the place marked with an “X.” Further, the agent directed plaintiff to write on a separate sheet of paper his wife’s name, age, address and medical history and stated that he, the agent, would then fill in the application. Plaintiff testified also that the agent said, “Don’t worry * * * I will fill it in and then send it to the company and in the meantime I will have the physician come up there.” The physician never came.
When the agent delivered the policy and was paid the initial premium of $5, there was no copy of the-application attached to the policy, and the insurer concedes this. Plaintiff testified also that he never saw the application after he handed it to the agent, signed by his wife in blank.
A customer at the filling station, who was there using facilities of the station in placing tires on his automobile, testified that he overheard a part of the conversation between plaintiff and the agent. According to this witness, plaintiff advised the agent that plaintiff’s wife had a heart condition and was being treated by a physician, and the agent answered, “Well, we would not worry about that, we will take care of that and everything; this is a new policy that we have which will cover this and will cover her.” The witness asserted also that he saw the agent hand plaintiff some papers, saw him mark a spot and heard him say, “You take this home and have your wife sign and bring it back, and don’t worry about the rest.”
The application, which was introduced in evidence and made an exhibit, contains no reference to the heart ailment with which the insured was afflicted. It is only fair to say that the agent categorically denied the material parts of plaintiff’s testimony and that of his corroborating witness, and stated that neither the plaintiff nor the insured, whom he claimed to have interviewed personally, made disclosure as to the insured’s heart affliction.
This case is simplified somewhat by the folloAving statement contained in the insurer’s brief:
“For the sake of argument, AAre will concede the following matters; they are not at issue in this appeal — beneficiary gave agent true ansAvers concerning rehumatic heart disease suffered by insured and treatments by Dr. Firestone; agent, without col- *99 fusion on the part of either beneficiary or insured, fraudulently filled out the application with answers which were not true and did not reflect the true health of insured; in soliciting the insurance and filling in the application, agent, as a soliciting agent, was an agent of the company and not of insured.”
In asking for a reversal of the judgment of the Court of Appeals and for final judgment in its favor, the insurer relies wholly on provisions of the policy, which it claims are conditions precedent to the effectiveness of the policy and which the knowledge and actions of its agent did not estop it from asserting in voiding the policy. Such provisions are:
“Incontestability. This policy shall be incontestable after it has been in force, during the lifetime of the insured, for one year from its date of issue, except for nonpayment of premiums.
“When voidable. If (1) within two years prior to the date of issue of this policy the insured has been a patient at, or an inmate of, any institution for the treatment of physical or mental disease, or has undergone any surgical operation, or has been attended by a physician; or if (2) prior to such date of issue the insured has been rejected for life insurance by this or any other insurer, if shown by the company that knowledge of such rejection would have led to a refusal by the company to issue this policy; then, in any such case, this policy shall, subject to the above incontestable clause, be voidable by the company, unless it shall be shown by the insured or any claimant that no such rejection, institutional, surgical, or medical treatment or attention was for a disease, injury, or physical or mental condition which actually contributed to the insured’s death or disability as defined herein, or unless reference to such institutional, surgical, or medical treatment or attention, or such prior rejection, is endorsed on this policy by the company; provided, however, that this policy shall not be voidable because of the absence of an endorsement referring to any information which was disclosed in a written application for this policy. If this policy does not take effect, or is voided by the company, the company will return the premiums paid.
“Authority. No person other than the president, a vice-president, or the secretary of the company, is authorized to make or discharge contracts, .or to alter, change, modify or *100 waive any of the terms and conditions of this policy or any endorsement hereon or to reinstate, or waive any forfeiture of, this policy at any time.”
Section 3911.22, Revised Code, reads as follows:
“Any person who solicits an application for insurance upon the life of another person shall, in any controversy between the insured or his beneficiary and the company issuing a policy upon such application, be considered the agent of the company and not the agent of the insured.”
Section 3911.06, Revised Code, recites:
“No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.”
And Section 3911.04, Revised Code, reads in part:
“Every life insurance company doing business in this state shall return with, and as part of any policy issued by it, to any person taking such policy, a complete copy of each application or other document held by it which is intended in any manner to affect the force or validity of such policy. A company which neglects to do so is estopped from denying the truth of any such application or other document, so long as it is in default for such copy.”
In the case of Acacia Mutual Life Ins. Co. v. Weissman, 164 Ohio St., 82, 128 N. E. (2d), 34, the insurer sought cancellation of a life insurance policy on the ground that the answers to certain questions in the application for reinstatement were fraudulenty false, and that the policy would not have been reinstated had the company known of the falsity of the answers which related to the health and medical treatment of the insured. No copy of the application for reinstatement was delivered to the insured, and this court, in affirming the judgment of the Court of Appeals, held that Section 9389, General Code (Section 3911. 04, Revised Oode), moans eixactly what it says, and that the fail *101 ure of the insurer to furnish the insured a copy of the application for reinstatement estopped the former from denying the truth of the application.
The purpose of a statute like Section 3911.04, Revised Code, “is to require the parties to incorporate anything pertaining to the validity of the contract in a single instrument, and thus to give notice to the insured and beneficiary of all matters by which they are bound and on which the effectiveness of the contract depends, and so that they will be protected against statements appearing on the face of the policy that were not made by the insured or applicant.” 13 Appleman, Insurance Law and Practice, 311, Section 7572.
There is a division of authority on the effect of the failure or neglect of an insurer to return a copy of the application with the insurance policy. Some courts, in an action to recover on the policy, have held that such failure or neglect merely bars a defense on the ground of misrepresentations made by the insured in the application for the policy but does not preclude the insurer from defending on an express provision of the policy that, if within a specified time prior to the issuance of the policy the insured was not in sound health or had been attended by a physician, the policy is voidable. Cases which take this view, which Appleman (13 Appleman, Insurance Law and Practice, 309, Section 7571) terms‘“the better rule,” are Eureka-Maryland Assurance Co. v. Gray, 74 App. D. C., 191, 121 P. (2d), 104, certiorari denied, 314 U. S., 613, 86 L. Ed., 494, 62 S. Ct., 114; Pullen v. Sun Life Ins. Co. of America, 74 App. D. C., 197, 121 F. (2d), 110, certiorari denied, 314 U. S., 613, 86 L. Ed., 494, 62 S. Ct., 112; and National Life & Accident Ins. Co. v. Green, 191 Miss., 581, 2 So. (2d), 838, suggestion of error overruled, 191 Miss., 581, 3 So. (2d), 812, 136 A. L. R., 1510. Compare Lamarand v. National Life & Accident Ins. Co., 58 Ohio App., 415, 16 N. E. (2d), 701.
On the other hand, Delaware courts have held that, under a statute- providing that no defense shall be allowed as to a life insurance policy because of anything contained in or omitted from the application, unless the application is attached to the policy, evidence tending to show that the insured had a serious heart ailment at the time the policy was issued and was und<A *102 going medical treatment therefor was inadmissible, where the application was not attached to the policy, notwithstanding the policy stated that it contained the entire agreement beween the parties and permitted the insurer to void the policy if the insured was suffering from described diseases, including heart disease, within two years before the issuance of the policy. Jacobs, Admr., v. Metropolitan Life Ins. Co. (Del. Sup.), 40 Del., 48, 1 A. (2d), 601, affirmed by the Delaware Supreme Court in Metropolitan Life Ins. Co. v. Jacobs, Admr., 40 Del., 54, 1 A. (2d), 603. Compare Coats v. Camden Fire Ins. Assn., 149 Wis., 129, 135 N. W., 524.
This court has held that conditions contained in life insurance policies to the effect that no.obligation is assumed by the insurer unless at the date of the policy the insured is alive and in sound health are effective and enforceable. See Metropolitan Life Ins. Co. v. Howle, 62 Ohio St., 204, 56 N. E., 908; 68 Ohio St., 614, 68 N. E., 4. Compare Lumpkin v. Metropolitan Life Ins. Co., 146 Ohio St., 25, 64 N. E. (2d), 63. But, as hereinafter pointed out, those conditions, being for the sole benefit of the insurer, are subject to waiver or estoppel.
Under the plain wording of Section 3911.04, Eevised Code, and the decision of this court in Acacia Mutual Life Ins. Co. v. Weissman, supra, the failure of the insurer herein to attach a copy of the application to the policy'prevents it from denying the truth of the statements contained in the application, but, notwithstanding this, can it successfully rely on the provisions of the policy quoted above to avoid liability, or can an estoppel be effectively raised against it by reason of knowledge acquired and acts perpetrated by its agent who solicited the risk, filled in the application, delivered the policy and collected the premiums?
The insurer places great reliance on the case of John Hancock Mutual Life Ins. Co. v. Luzio, 123 Ohio St., 616, 176 N. E., 446, and it must be confessed there are expressions in the syllabus and opinion of that case which lend support to its position. However, it seems to us that the Lusio case comprehends basically a situation where the applicant for insurance has deliberately falsified the condition of his health to the insurer’s agent, or where the 'applicant and the agent have connived- for *103 the purpose of defrauding the insurer. Thus, in the Luzio case, it is stated in the course of the opinion:
“If the applicant has, truthfully and in good faith, supplied such information (the condition of his health) to the agent, and the agent has wrongfully or fraudulently reported the facts so given him, the soliciting agent becomes the agent of the company, which becomes responsible for such wrongful or fraudulent conduct of its agent in the business intrusted to him. But if the insured fails to disclose facts and conditions, of which he is aware, materially affecting the risk, the insured can not recover unless the company waives forfeiture after it obtains knowledge of such undisclosed facts and conditions.”
And, again in the Luzio case, the following language is quoted with apparent approval from the opinion in the case of Union Ins. Co. of Dayton v. McGookey & Moore, 33 Ohio St., 555, 565:
‘ ‘ Accordingly, the current of the more modern decisions, is, that, where an agent of an insurance company, acting within the' general scope of the business intrusted to him as such agent, fills up, in his own language, a written application for insurance, from the statements of the insured, fully and truthfully made, receives the premium and issues a policy, duly executed by the insurer, on such application, the company shall not be permitted, when a loss happens, to defeat the policy by denying the truth of the application, nor the authority of the agent in the transaction, although he has transcended his authority, unless the insured is chargeable with knowledge of his having exceeded his authority.”
See, also, Insurance Co. v. Williams, 39 Ohio St., 584, 48 Am. Rep., 474, and the recently decided case of Saunders v. Allstate Ins. Co., ante, 55.
The United States Sixth Circuit Court of Appeals in Gettins v. United States Life Ins. Co., 221 F. (2d), 782, found the Luzio case inconclusive and in apparent conflict with another nearly contemporaneous decision of the Supreme Court of Ohio on the authority of a limited agent of an insurer to waive the conditions of a life insurance policy. In this connection, see Foster v. Scottish Union & National Ins. Co. of Edinburgh, 101 Ohio St., 180, 127 N. E., 865; Shields v. Supreme Council of the *104 Royal Arcanum, 123 Ohio St., 31, 173 N. E., 731; and National Surety Co. v. Bohn, 125 Ohio St., 537, 547, 182 N. E., 506, 510.
Attention is directed to the case of Bible v. John Hancock Mutual Life Ins. Co. of Boston, 256 N. Y., 458, 176 N. E., 838. There the insurer issued two policies of insurance upon the life of one Anna Bible, payable on her death to her husband. The policies contained language as to medical attention and waiver of their terms similar to that contained in the policy in the present ease. The insured died, and an action was brought to recover on the policies, in which the plaintiff was successful. There, as here, the application was not attached to the policies. In the opinion, written by Chief Judge Cardozo, it is said:
“The question remains whether the agent to whom knowledge was imparted (as to the health of the insured and her treatment in a hospital) was so related to the defendant as to charge it with his knowledge. * * * the agent was more than a soliciting agent * * *. He was that, but much besides. He was authorized not only to solicit applications, but to make delivery of the policies, and upon delivery and afterwards to collect the weekly premiums. * * * If at the time of delivery and the collection of the premium, he was informed that the insured was in a hospital and ill, he was under a duty to communicate to his employer the information thus acquired * * *. The employer with that knowledge retained the premiums as its own.
“In holding that notice to the agent was notice to the principal, we are not unmindful of the limitations in the policies upon his authority to waive. They do not touch the case at band. The insured became chargeable with notice, upon the acceptance of the policies, that there was no authority in the agent to waive the breach of a condition coming to his notice after a policy had been delivered as a contract presently existing * * *., She was not chargeable with notice that the limitation would apply by retroaction so as to nullify a waiver or estoppel having its origin in conduct antecedent to the contract * *
The Bible case has frequently been cited and applied by the New York courts. See Lampke, Admx., v. Metropolitan Life Ins. Co., 279 N. Y., 157, 18 N. E. (2d), 14; Dore v. John Hancock Mutual Life Ins. Co., 100 N. Y. Supp. (2d), 340, 277 App. *105 Div., 375; and Heine v. John Hancock Mutual Life Ins. Co., 118 N. Y. Supp. (2d), 336, 281 App. Div., 769.
Por representative eases in general accord, see Neto Furniture & Undertaking Co. v. Tri-County Burial Club, 194 Ark., 1045, 109 S. W. (2d), 146; Continental Casualty Co. v. Linn, 226 Ky., 328, 10 S. W. (2d), 1079; World Ins. Co. v. Bethea, Admx. (Miss.), 93 So. (2d), 624.(dismissal for want of a substantial federal question, 355 U. S., 181, 2 L. Ed. [2d], 186, 78 S. Ct., 262); Brabham v. Pioneer Life Ins. Co. (Mo. App.), 253 S. W., 786 (modified on other grounds, State, ex rel. Continental Life Ins. Co. of Kansas City, v. Allen et al., Judges, 303 Mo., 608, 262 S. W., 43); Bohannon v. Illinois Bankers’ Life Assn., 223 Mo. App., 877, 20 S. W. (2d), 950; Templeton v. Standard Life Ins. Co., 235 Mo. App., 424, 140 S. W. (2d), 726; North American Accident Ins. Co. v. Canady, Admr., 196 Okla., 105, 163 P. (2d), 221; National Life & Accident Ins. Co. v. Cudjo (Okla.), 304 P. (2d), 322; Adams v. LaSalle Life Ins. Co. (Tex. Civ. App.), 99 S. W. (2d), 386 (writ of error dismissed); Able v. Pilot Life Ins. Co., 186 S. C., 26, 194 S. E., 628; Life & Casualty Ins. Co. v. King, 137 Tenn., 685, 195 S. W., 585. See, also, 45 Corpus Juris Secundum, 651 et seq., Insurance, Section 693.
We are aware of the cases which are contrary to the rule stated in the Bible case. However, we think that case corresponds with the attitude generally taken by the Ohio courts, which is that knowledge incident to an insurance risk acquired by an agent of the insurer, who is authorized to solicit and make out applications for insurance policies, submit them to his principal, deliver policies when issued and collect premiums thereon, is imputable to his principal, and, in the absence of proof that the applicant for insurance knew or should have known that the insurer was being deceived, the insurer is estopped from disclaiming liability on a subsequently issued policy by showing that its agent failed or neglected to disclose such information to it.
And this is a fair rule. Insurers are in a business. That business is carried on by agents of their own selection. If an agent, acting within the actual or apparent scope of his authority and in the performance of his work, engages in a breach *106 of trust which misleads both his principal and the applicant for insurance, it would seem only just that the insurer should bear the consequences of its agent’s conduct rather than the applicant, who, in seeking insurance protection and expending his money therefor, has the right to rely on the honesty and fair dealing of the agent.
The tendency of many courts is to apply the principles of waiver and estoppel in a liberal manner to insurance contracts to enforce good faith and to prevent injustice and fraud where the insured has been misled by the acts of the insurer or its agents.
In our opinion, questions of fact for the determination of a jury were presented in the instant case. Those questions were submitted to the jury, under instructions by the court, which were substantially correct, and the jury found against the insurer. By their judgments, the two lower courts approved the jury’s verdict, and the judgment of the Court of Appeals is, hereby, affirmed.

Judgment affirmed.

Weygandt, C. J., Matthias, Bell and Herbert, JJ., concur.
Stewart and Taft, JJ., concur in the judgment.